No. 23-70007

IN THE

# United States Court of Appeals for the Fifth Circuit

DAVID SANTIAGO RENTERIA,

*Petitioner-Appellant,*

v.

BOBBY LUMPKIN, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION; STATE OF TEXAS

*Respondents-Appellees.*

On Appeal from the United States District Court for the Western District of Texas, El Paso Division, No. 3:23-CR-2080-FM

**RESPONDENTS-APPELLEES' BRIEF AND OPPOSITION TO MOTION FOR A STAY OF EXECUTION**

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

JOSH RENO
Deputy Attorney General
For Criminal Justice

EDWARD L. MARSHALL
Chief, Criminal Appeals Division

JEFFERSON CLENDENIN
Assistant Attorney General
*Counsel of Record*

P.O. Box 12548, Capitol Station
Austin, Texas 78711
(512) 936-1400
jay.clendenin@oag.texas.gov

*Counsel for Respondents-Appellees*

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

*Respondents-Appellees*
   Bobby Lumpkin, Director, Texas Department of Criminal Justice, Correctional Institutions Division

   State of Texas

*Counsel for Respondents-Appellees*
   Jefferson Clendenin, Assistant Attorney General
   OFFICE OF THE ATTORNEY GENERAL OF TEXAS

*Petitioner-Appellant*
   David Santiago Renteria

*Counsel for Plaintiff-Appellant*
   Tivon Schardl
   FEDERAL DEFENDER OFFICE

                    s/ Jefferson Clendenin
                    JEFFERSON CLENDENIN
                    Assistant Attorney General

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS ........................................i

TABLE OF CONTENTS ........................................................ii

TABLE OF AUTHORITIES ...................................................iv

RESPONDENTS-APPELLEES' BRIEF AND OPPOSITION TO MOTION FOR A STAY OF EXECUTION ................................1

STATEMENT OF JURISDICTION ...........................................3

STATEMENT OF THE ISSUES ..............................................3

STATEMENT OF THE CASE ..................................................3

I.    Procedural History ......................................................3

II.   Statement of Facts .......................................................9

    A.    Facts of the crime ...............................................9

    B.    Punishment-phase evidence .............................10

        1.    The State's evidence ..................................10

        2.    Renteria's mitigation case ........................11

SUMMARY OF THE ARGUMENT ........................................12

STANDARDS OF REVIEW ...................................................12

I.    The Removal ............................................................12

II.   The Standard Governing Stay Requests .......................15

ARGUMENT ............................................................. 17

I.    The District Court Properly Found Renteria's Notice of Removal
      Untimely and Baseless ................................................... 17

      A.    Renteria's notice of removal was untimely, and the district
            court lacked jurisdiction to consider it ................................. 18

      B.    Renteria identifies no valid basis for removal of the state
            court's proceeding ................................................. 32

      C.    Renteria was not denied or unable to enforce any protected
            right in state court .............................................. 39

II.   The Removal Statute Does Not Provide Jurisdiction to Grant a Stay
      of Execution ........................................................ 42

CONCLUSION .......................................................... 43

CERTIFICATE OF COMPLIANCE WITH RULE 37(a)(7)(B) ............... 44

CERTIFICATE OF COMPLIANCE WITH ECF FILING STANDARDS
......................................................................... 45

CERTIFICATE OF SERVICE ............................................. 45

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page**

*Alabama v. Conley*, 245 F.3d 1292 (11th Cir. 2001) ............................... 37

*Alexander v. MN*, No. 22-CV-740, 2022 WL 1572035 (D. Minn. Mar. 29, 2022) ....................................................................................................... 20

*Barber v. Vance*, No. 3:16-CV-2105, 2019 WL 267874 (D. Or. Jan. 18, 2019) ................................................................................................ 20, 40

*Barefoot v. Estelle*, 463 U.S. 880 (1983) .................................................. 16

*Beatty v. Lumpkin*, 52 F.4th 632 (5th Cir. 2022) ..................................... 21

*Belyeu v. Johnson*, 82 F.3d 613 (5th Cir. 1996)........................................ 34

*Butler v. King*, 781 F.2d 486 (5th Cir. 1986) ........................................... 25

*Cabello v. Texas*, 71 F. App'x 315 (5th Cir. 2003) ................................... 37

*Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256 (5th Cir. 1995) ...................................................................................................................... 14

*Chestnut v. People of State of N.Y.*, 370 F.2d 1 (2d Cir. 1966)................ 37

*Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984) ...................................................................................................................... 15

*City of Greenwood v. Peacock*, 384 U.S. 808 (1966) .......................... 33, 41

*County of Yazoo, Miss. v. Prewitt*, No. 23-60073, 2023 WL 7381440 (5th Cir. Nov. 7, 2023) ............................................................................... 37, 40

*Davis v. Scott*, 157 F.3d 1003 (5th Cir. 1998)......................................... 15

*Delavigne v. Delavigne*, 530 F.2d 598 (4th Cir. 1976)............................. 33

*Delaware v. Desmond*, 792 F. App'x 241 (3d Cir. 2020) ........................... 20

*Dema v. Arizona*, No. CV-07-0726, 2008 WL 2941167 (D. Ariz. July 25, 2008) ................................................................................................. 19

*Denson v. Williams*, 341 F. Supp. 180 (S.D. Tex. 1972) ......................... 34

*District of Columbia Court of Appeals v. Feldman*, 460 U.S. 476 (1983) ................................................................................................. 30

*Doe v. Berry*, 967 F.2d 1255 (8th Cir. 1992) .......................................... 33

*Ex parte Johnson*, 12 S.W.3d 472 (Tex. Crim. App. 2000) ..................... 26

*Felker v. Turpin*, 518 U.S. 651 (1996) .................................................... 28

*Garcia v. Castillo*, 431 F. App'x 350 (5th Cir. 2011) .............................. 16

*Georgia v. Meadows*, --- F. Supp. 3d ---, 2023 WL 5829131 (N.D. Ga. Sept. 8, 2023) ............................................................................................ 14, 28

*Hill v. McDonough*, 547 U.S. 573 (2006) ................................... 15, 42, 43

*Hilton v. Braunskill*, 481 U.S. 770 (1987) ............................................. 16

*Howlett By and Through Howlett v. Rose*, 496 U.S. 356 (1990) ............. 35

*Idaho v. Oelker*, No. 3:20-CV-383, 2020 WL 6081885 (D. Idaho Oct. 15, 2020) ............................................................................................. 19, 30

*Illinois v. Young*, 2012 WL 2031129 (C.D. Ill. June 6, 2012) ................. 36

*In re State of Texas ex rel. Bill D. Hicks*, No. WR-95,092-01, 2023 WL 6074482, at *1 (Tex. Crim. App. Sept. 18, 2023) ............................. *passim*

*Johnson v. Mississippi*, 421 U.S. 213, 219 (1975) ................. 13, 33, 35, 37

*Johnson v. People of State of Cal.*, 473 F.2d 1044 (9th Cir. 1973) .......... 33

*Kansas v. Gilbert*, Nos. 22-3213 & 22-3230, 22-3229 & 22-3249, 2023 WL 2397025 (10th Cir. Mar. 8, 2023) ............................................................. 19

*Kruebbe v. Beevers*, 692 F. App'x 173 (5th Cir. 2017) ...................... 13, 15

*Lance v. Dennis*, 546 U.S. 459 (2006) ...................................................... 30

*Mackey v. Massachusetts*, 582 F. Supp. 3d 1 (D. Mass. 2022) ............... 33

*Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720 (5th Cir. 2002) ............................................................................................................ 13, 14

*Massachusetts v. Thomas*, No. 23-10789, 2023 WL 4204432 (D. Mass. June 27, 2023) ............................................................................................... 19

*Maze v. Tennessee*, No. 3:15-CV-698, 2015 WL 3989125 (M.D. Tex. June 30, 2015) ..................................................................................................... 20

*McMullen v. Cain*, 726 F. App'x 257 (5th Cir. 2018) ............................... 37

*Medina v. California*, 505 U.S. 437 (1992) ............................................... 36

*Miller v. Lambeth*, 443 F.3d 757 (10th Cir. 2006) .................................... 37

*Miller v. Louisiana*, No. 18-14251, 2019 WL 1293273 (E.D. La. Mar. 1, 2019) ........................................................................................................... 20

*Mnuk v. Texas*, No. A-14-CV-1128, 2015 WL 1003863 (W.D. Tex. Mar. 5, 2015) ........................................................................................................... 14

*Moye v. Clerk, DeKalb Cty. Superior Court*, 474 F.2d 1275 (5th Cir. 1973) ....................................................................................................................... 30

*Nelson v. Campbell*, 541 U.S. 637 (2004) ........................................... 15, 16

*Nken v. Holder*, 556 U.S. 418 (2009) ........................................................ 16

*Oliver v. Lewis*, 891 F. Supp. 2d 839 (S.D. Tex. 2012) ............... 13, 32, 34

*Oviedo v. Hallbauer*, 655 F.3d 419 (5th Cir. 2011) .................................. 19

*People of State of N.Y. v. Baker*, 354 F. Supp. 162 (S.D. N.Y. 1973) ...... 34

*People of State of N.Y. v. Hutchinson*, 360 F.2d 759 (2d Cir. 1966) ....... 34

*Porter v. Estelle*, 709 F.2d 944 (5th Cir. 1983) ........................................ 42

*Pruett v. Choate*, 711 F. App'x 203 (5th Cir. 2017) .................................. 29

*Rhoades v. Martinez*, No. 21-70007, 2021 WL 4434711 (5th Cir. Sept. 27, 2021) ............................................................................................................ 36

*Robertson v. Ball*, 534 F.2d 63 (5th Cir. 1976) ........................................ 38

*Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) ................................... 30

*Scott v. Artis*, 2023 WL 6973870 (E.D. Mich. Oct. 23, 2023) ................. 20

*Setts v. Dixon*, No. 1:23-CV-99, 2023 WL 4109780 (N.D. Fla. May 30, 2023) ............................................................................................................ 20

*Shinn v. Martinez Ramirez*, 596 U.S. 366 (2022) ..................................... 31

*Shoop v. Twyford*, 596 U.S. 811 (2022) .............................................. 21, 29

*Smith v. Winter*, 717 F.2d 191 (5th Cir. 1983) ................................ *passim*

*Spencer v. Texas*, 385 U.S. 554 (1967) ..................................................... 36

*St. James Associates v. Larsen*, 67 F. App'x 684 (3d Cir. 2003) ............. 37

*Staley v. State*, 420 S.W.3d 785 (Tex. Crim. App. 2013) .................... 26, 31

*State of Ga. v. Rachel*, 384 U.S. 780 (1966) ................................. 22, 27, 35

*State of Iowa v. Johnson*, 976 F. Supp. 812 (N.D. Iowa 1997) ................ 34

*Texas v. Kearns*, No. 5:14-CV-27, 2014 WL 258786 (W.D. Tex. Jan. 23, 2014) ................................................................................................ 14

*Thorp Finance Corp. v. Lehrer*, 587 F. Supp. 533 (E.D. Wis. 1984) ....... 33

*Total Gas & Power N. Am., Inc. v. Fed. Energy Regulatory Comm'n*, 859 F.3d 325 (5th Cir. 2017) ................................................................... 15

*Tyler v. Schollmeyer*, No. 4:19-CV-2621, 2019 WL 5424379 (E.D. Mo. Oct. 23, 2019) ......................................................................................... 19, 27

*United States v. Belc*, No. 22-12558, 2023 WL 6232474 (11th Cir. Sept. 26, 2023) .............................................................................................. 33

*United States v. Moore*, 71 F.4th 392 (5th Cir. 2023) ........................... 24

*Walker v. Epps*, 287 F. App'x 371 (5th Cir. 2008) ................................. 43

*Whitestone Sav. and Loan Ass'n v. Romano*, 484 F. Supp. 1324 (E.D. N.Y. 1980) ............................................................................................... 33

*Williams v. Corrigan*, No. 22-2096, 2023 WL 3868657 (6th Cir. May 12, 2023) ......................................................................................... 19, 20, 29

*Williams v. Holloway*, No. 3:14-CV-126, 2014 WL 5529742 (E.D. Vir. Oct. 31, 2014) ............................................................................................. 19

*Williams v. State of Miss.*, 608 F.2d 1021 (5th Cir. 1979) ..................... 38

*Woods v. Weaver*, 13 F. App'x 304 (6th Cir. 2001) ................................ 29

*Yates v. United States*, 574 U.S. 528 (2015) ........................................ 24

## Statutes and Rules

28 U.S.C. § 1291 .................................................................................. 3

28 U.S.C. § 1443(1) ...................................................................... *passim*

28 U.S.C. § 1447(c)...................................................................... 3, 15, 18

28 U.S.C. § 1455(a) ............................................................................ 13

28 U.S.C. § 1455(b)(1)................................................................ *passim*

28 U.S.C. § 1455(b)(2)....................................................................... 39

28 U.S.C. § 1455(b)(3) ......................................................... 15, 25, 28, 42

28 U.S.C. § 1455(b)(4) ....................................................................... 14

28 U.S.C. § 1455(b)(5) ....................................................................... 13

28 U.S.C. § 1455(c)...................................................................... 13, 21

28 U.S.C. § 2244(b)(3)(A) ................................................................. 28

28 U.S.C. § 2283................................................................. 15, 28, 42

Fed. R. App. Proc. 8(a)(1) ............................................................. 2, 8

Fed. R. Civ. P. 11(b)(1) ..................................................................... 13

Fed. R. Civ. P. 11(b)(2) ..................................................................... 13

Fifth Circuit Rule 8 .................................................................. 2, 3, 8

Tex. Code Crim. Proc. art. 11.071 § 5 .............................................. 30, 40

Tex. Code Crim. Proc. art. 62.101(a) ................................................. 26

## Secondary Sources

Black's Law Dictionary (11th ed. 2019)................................................. 18

## RESPONDENTS-APPELLEES' BRIEF AND OPPOSITION TO MOTION FOR A STAY OF EXECUTION

Petitioner-Appellant David Renteria was convicted and sentenced to death for the murder of five-year-old Alexandra Flores. *See Renteria v. State*, 206 S.W.3d 689, 693 (Tex. Crim. App. 2006). Renteria is scheduled to be executed after 6:00 p.m. (Central Time) on November 16, 2023. Renteria has unsuccessfully challenged his conviction and sentence in state and federal court. He has exhausted his postconviction remedies and, accordingly, the state trial court scheduled his execution. *See In re State of Texas ex rel. Bill D. Hicks*, No. WR-95,092-01, 2023 WL 6074482, at *1 (Tex. Crim. App. Sept. 18, 2023).

After the state trial court scheduled Renteria's execution, he sought to vacate the court's execution order and warrant, and he requested a discovery order granting him access to the El Paso County District Attorney's files. *See id.* The trial court granted Renteria's requests. *See id.* But because the trial court lacked jurisdiction to do so, the El Paso County District Attorney sought mandamus relief from the Texas Court of Criminal Appeals (CCA). *See id.* The CCA granted relief and ordered the trial court to rescind its orders purporting to vacate its execution order and warrant and to rescind its discovery order. *Id.* Renteria then

sought a novel and unsupported postconviction removal to federal court of the state trial court's ministerial proceeding setting an execution date. ROA.4–20.

The district court properly rejected Renteria's request and remanded the case to the state court. ROA.273–74. After Renteria moved for reconsideration, ROA.277–86, the district court again rejected Renteria's unsupported removal effort, ROA.323–36. The district court found Renteria's removal request was significantly untimely and failed to satisfy the applicable standard under 28 U.S.C. § 1443(1). ROA.323–36. Those findings were indisputably correct. Indeed, Renteria offered no plausible support for his attempt to remove a ministerial postconviction state court proceeding to federal court decades after he was prosecuted, and he made *no* effort in the district court to show his request met the statutory criteria. This Court should affirm the district court's orders.

For the same reasons, Renteria cannot justify a stay of execution based on a frivolous attempt to remove ministerial, postconviction state court proceedings to federal court. Initially, Renteria failed to first request a stay in the lower court as required by Fed. R. App. P. 8(a) and 5th Cir. R. 8.1, and he makes no showing that such a request would be

impracticable. Moreover, Renteria fails to identify any authority that gives this Court jurisdiction to grant a stay of execution. He is also disentitled to a stay of execution because the equities weigh heavily against him in light of the extraordinarily dilatory nature of his removal request and where he failed entirely to show any remedy was available in federal court. Therefore, this Court should affirm the district court's orders and deny Renteria's motion for a stay of execution.

## STATEMENT OF JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. §§ 1291, 1447(d), and 5th Cir. R. 8.

## STATEMENT OF THE ISSUES

Whether the district court properly remanded Renteria's case to state court.

## STATEMENT OF THE CASE

### I.    Procedural History

Renteria was convicted and sentenced to death for the murder of five-year-old Alexandra Flores. *See Renteria v. Davis*, 814 F. App'x 827, 828–29 (5th Cir. 2020). The CCA upheld Renteria's conviction on direct appeal but reversed on punishment and remanded for a new punishment

trial. *Renteria v. State*, 206 S.W.3d 689, 710 (Tex. Crim. App. 2006). Renteria filed his first state application for a writ of habeas corpus prior to the CCA's ruling on direct appeal. *See Ex parte Renteria*, No. 65, 627-01, 2014 WL 7191058, at *1 (Tex. Crim. App. Dec. 17, 2014). The CCA denied Renteria's claims in his first application that challenged his conviction and dismissed as moot Renteria's claims that challenged his death sentence. *Id.*

At Renteria's second punishment trial, he was again sentenced to death. *See Renteria v. State*, No. AP-74,829, 2011 WL 1734067, at *1 (Tex. Crim. App. May 4, 2011). Following the second punishment trial, the CCA upheld Renteria's death sentence on direct appeal. *Id.* Renteria filed a second state application for a writ of habeas corpus. *See Ex parte Renteria*, Nos. WR-65,627-02, WR-65,627-03, 2014 WL 7188848, at *1 (Tex. Crim. App. Dec. 17, 2014). The CCA denied Renteria's claims in his second application that challenged his death sentence. *Id.* The CCA construed Renteria's claims in his second application that challenged his conviction as constituting a separate and subsequent application and dismissed it as such. *Id.*

4

Renteria then filed a federal habeas petition. *See Renteria v. Davis*, No. EP-15-CV-62, 2019 WL 611439, at *4 (W.D. Tex. Feb. 12, 2019). During the pendency of his petition, Renteria requested a stay of the lower court's proceedings to investigate a statement provided to the El Paso Police Department. *See* Order Denying Pet'r's Mot. to Stay Proceedings, *Renteria v. Davis*, No. 3:15-CV-62 (W.D. Tex. June 8, 2018), ECF No. 111. The court denied the request.[1] *Id.* In a sealed ex parte motion, Renteria requested funding to investigate the statement. *See* Order Denying Pet'r's Ex Parte and Sealed Mot. for Funds, *Renteria v. Davis*, No. 3:15-CV-62 (W.D. Tex. June 19, 2018), ECF No. 121. The court below denied the request. *Id.* The court later denied Renteria's petition and his motion to alter or amend its judgment. *Renteria v. Davis*, 2019 WL 611439, at *88–89; Order Denying Pl's Mot. to Alter or Amend J., *Renteria v. Davis*, No. 3:15-CV-62 (W.D. Tex. Apr. 10, 2019), ECF No. 128.

---

[1]    In its order, the lower court noted that claims made by the purported witness were inconsistent with the evidence—i.e., the date of the murder and whether Alexandra's eyes had been removed and her legs broken by her assailant. *Id.* at 8. In denying federal habeas relief, the court discussed evidence of Renteria's dishonesty, deception, and unwillingness to admit even minor flaws. *Renteria v. Davis*, 2019 WL 611439, at *12–14.

Renteria next filed in this Court an application for a certificate of appealability, which the Court denied. *Renteria v. Davis*, 814 F. App'x at 835. The Court also affirmed the lower court's denial of his motion for funding. *Id*. The United States Supreme Court denied Renteria's petition for a writ of certiorari. *Renteria v. Lumpkin*, 141 S. Ct. 1412 (2021).

In May 2023, the District Attorney's Office for El Paso County moved the state trial court to schedule Renteria's execution. ROA.89–94. In June 2023, Renteria's federal habeas counsel requested access to the District Attorney's Office's file. ROA.137–39, 141. On June 9, the state trial court scheduled Renteria's execution for November 16, 2023. ROA.146–48. The trial court later vacated and reissued its execution order and warrant, again scheduling Renteria for execution on November 16, 2023. ROA.150–54, 156–70, 172–73, 175–80, 182–84. Renteria requested that the court reconsider its execution order and moved the court to compel the District Attorney's Office to provide counsel access to its files. *See In re State ex rel. Bill D. Hicks*, 2023 WL 6074482, at *1. Renteria requested and received a hearing in the state trial court regarding his requests. *See id.*; ROA.34–72. The court then vacated its execution order and ordered the District Attorney's Office to make its

6

files available to Renteria. *See In re State ex rel. Hicks*, 2023 WL 6074482, at *2.

The District Attorney's Office sought mandamus relief in the CCA, which the court granted. *See id.* The CCA found the trial court had no authority under state law to vacate the execution order and warrant. *Id.* The CCA also found the trial court lacked jurisdiction to compel the District Attorney's Office to comply with a discovery order. *Id.* at *2–3. Accordingly, the CCA ordered the trial court to rescind its orders purporting to vacate the execution order and directing the clerk to withdraw the execution warrant and to rescind its discovery order. *Id.* at *3. Renteria moved for rehearing and a stay of execution, which the CCA denied. Order, *In re State ex rel. Bill D. Hicks*, No. WR-95,092-01 (Tex. Crim. App. Oct. 25, 2023).

One month later, Renteria filed in the district court a Notice of Removal in which he complained of the CCA's disposition of the District Attorney's Office request for mandamus relief and the proceedings in the trial court. ROA.4–20. The district court initially scheduled a motion hearing. ROA.245–46. But after Respondents filed a Motion for Summary Remand, ROA.247–71, the court granted that motion and remanded the

case to state court. ROA.273–74. Renteria moved for reconsideration of the district court's decision, ROA.277–306, which the court denied, ROA.323–36. Renteria then filed a notice of appeal of the district court's orders remanding his case to state court and denying his motion for reconsideration. ROA.337.

Renteria did not file in the district court a motion for a stay of execution. *See* Fed. R. App. Proc. 8(a)(1) (stating that a party must ordinarily first move in the district court for a stay of a district court's order or judgment). Nor does he show why doing so would be impracticable, a mandatory showing if such a motion is first filed in the court of appeals. Fed. R. App. P. 8(a)(2)(A). Additionally, Renteria failed to comply with 5th Cir. R. 8.1, which requires documentary proof of a motion for a stay and the order denying a stay in district court, or a statement of why such proof cannot be provided.

Renteria also filed in the state trial court another motion to vacate the order setting his execution and requesting an order to show cause against a finding of contempt, an Application for Writ of Habeas Corpus Under Article I, § 12 of the Texas Constitution and Texas Code of Criminal Procedure Article 11.05, and a subsequent application for a writ

of habeas corpus with an accompanying motion for a stay of execution.

Those motions and applications remain pending.

## II.    Statement of Facts

### A.    Facts of the crime

[Renteria] was a 32[-]year-old registered sex offender on probation for committing an indecency offense against an eight-year-old girl when he was arrested for the murder of the five-year-old girl in this case. On November 18, 2001, this five-year-old victim disappeared from a Wal-Mart store where she was shopping with her parents. The next day, her nude, partially burned body with a partially burned plastic bag over her head was discovered in an alley sixteen miles from the Wal-Mart. When she was set on fire, she already had been manually strangled. The medical examiner testified that the victim also received two blows to her head. The medical examiner also testified that the victim could have been sexually assaulted, although he found no physical evidence of sexual assault.

[Renteria's] palm print matched a latent palm print that was lifted from the plastic bag covering the victim's head. A search of [Renteria's] van revealed blood stains containing the victim's DNA. [Renteria] and his van were at the Wal-Mart when the victim disappeared. A Wal-Mart security guard briefly spoke to [Renteria], and Wal-Mart surveillance cameras showed a man wearing a light-colored hat, a dark shirt, and dark shorts walking out with the victim. Earlier that day [Renteria], wearing clothes very similar to those worn by the man walking out of the Wal-Mart store, had been at a nearby Sam's store with his father. While at Sam's, [Renteria] purchased oranges, and the victim's autopsy revealed pieces of orange wedges in her stomach.

[Renteria] was arrested on December 3, 2001, and he gave a written custodial statement to the police. This statement was not admitted into evidence at [Renteria's] trial. In this statement, [Renteria] claimed that an "Azteca" gang member nicknamed "Flaco," whom [Renteria] had known in jail, and several other persons, whom [Renteria] did not know, were primarily responsible for the victim's murder. [Renteria] claimed that he helped these people commit the offense out of fear they would harm his family. He also claimed that his involvement in the offense was limited to luring the victim out of the Wal-Mart and helping "Flaco" and the others dispose of and burn her body after the others had murdered her.

*Renteria*, 206 S.W.3d at 693–94.

## B.    Punishment-phase evidence

### 1.    The State's evidence

The State presented evidence of the capital offense at the punishment trial. . . .

The State also presented evidence of Renteria's troubles with the law in the years leading up to the instant offense. In 1992, he committed the offense of indecency with a child. The victim of that offense testified that Renteria molested her in her home when she was seven years old. She testified that Renteria called her into the bathroom where he was sitting on the toilet with his pants and underwear pulled down. Renteria asked her to sit on his lap, told her "that his private area hurt and that he needed [her] to rub it for him," and touched her in her "private area in the front." They later "ended up on the floor," where Renteria unsuccessfully attempted to have intercourse with her and she saw him ejaculate. Afterward, Renteria told her "not to tell anybody" about their "secret." Renteria pled guilty to this offense in 1994 and was placed on deferred adjudication probation for ten years.

While on probation, Renteria committed three driving while intoxicated (DWI) offenses in 1995, 1997, and 2000. . . .

Renteria violated the terms of probation at various times by drinking alcohol, staying out past curfew, driving without a valid driver's license, traveling to Mexico, and being around children. . . . The evidence further showed that Renteria was dishonest with his sex-offender treatment counselor, his probation officers, and his employers. Norma Reed, his counselor, testified that Renteria initially admitted committing the indecency with a child offense but then denied it until he was faced with possible termination from the program. When Reed administered an "Abel Assessment" test, Renteria scored 85% on the "social desirability" section, which indicated "a significant concern that he was likely not to be responding truthfully on the self-report portions [of the test]." Renteria informed Reed after the fact that he had been living with his eighteen-year-old pregnant girlfriend, and he admitted that he failed to tell his probation officer this information. When Renteria was employed at a parking lot less than a block away from a school, he informed probation officer Rebecca Gonzales that his employer was not aware of his indecency offense. Reed testified that Renteria informed her in 1999 that he had lost a job because he had lied about his criminal history on his job application. . . .

*Renteria v. State*, 2011 WL 1734067, at *1–2.

## 2.    Renteria's mitigation case

Renteria presented evidence through the testimony of his family, his childhood dance instructor, a high school classmate, the staff at his school, and a mental health expert. They described him as a good kid—quiet, friendly, respectful, studious, popular, altar boy, National Honors Society member, scholarship recipient, and extracurricular activity participant—whose life came apart after his arrest and conviction for indecency with a child.

*Renteria v. Davis*, 2019 WL 611439, at *4.

## SUMMARY OF THE ARGUMENT

Renteria sought an unprecedented and unsupported removal to federal court of a postconviction, ministerial state court proceeding twenty years after he was prosecuted. This Court should affirm the district court's orders because it correctly concluded Renteria's removal request was untimely and baseless under the applicable statutes and Supreme Court precedent. Moreover, this Court should deny a stay of execution because Renteria's removal request was frivolous and dilatory, he failed to comply with federal and local rules for such stays, and this Court lacks jurisdiction to enter a stay in these proceedings.

## STANDARDS OF REVIEW

### I.    The Removal Standard

Section 1433(1), on which Renteria relied to remove the state court proceeding to federal court, provides that a criminal prosecution commenced in a state court may be removed by the defendant to the appropriate United States district court if the prosecution is against "any person who is denied or cannot enforce in the courts of such State a right under any law providing for the equal civil rights of citizens of the United

States[.]" But only rights arising "under a federal law providing for specific civil rights stated in terms of racial equality" qualify. *Johnson v. Mississippi*, 421 U.S. 213, 219 (1975) (citation and quotation marks omitted). Section 1455(b) requires that, except for good cause, a notice of removal of a criminal prosecution be filed not later than thirty days after the *arraignment* in state court or any time *before trial*, whichever date is *earlier*. 28 U.S.C. § 1455(b)(1).[2] A federal court may only issue a writ of habeas corpus pursuant to the statute if summary remand is not ordered and if the defendant is in custody "on process issued by the State court[.]" 28 U.S.C. § 1455(b)(5), (c).

The removing party invoking federal jurisdiction has the burden of proof on a motion to remand. *See Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002); *Oliver v. Lewis*, 891 F. Supp.

---

[2]    Renteria's request for removal was based on § 1443(1). ROA.4. Section 1455 "merely provides procedures that must be followed in order to remove a criminal case from state court when a defendant has the right to do so under another provision, such as 28 U.S.C. § 1443." *Kruebbe v. Beevers*, 692 F. App'x 173, 176 (5th Cir. 2017) (per curiam). Notably, § 1455(a) requires that a notice of removal be "signed pursuant to Rule 11 of the Federal Rules of Civil Procedure and contain[ ] a short and plain statement of the grounds for removal[.]" As discussed herein, Renteria failed to show the notice of removal was not presented for an improper purpose, e.g., unnecessary delay, or that its legal contentions are warranted by existing law or a nonfrivolous argument for extending existing law. Fed. R. Civ. P. 11(b)(1), (2).

2d 839, 842 (S.D. Tex. 2012). The federal court looks to the record in the state court at the time of removal. *Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 264 (5th Cir. 1995). Removal jurisdiction raises significant federalism concerns, so if there is any doubt that removal is permissible, "ambiguities are construed against removal because the removal statute should be strictly construed in favor of remand." *Manguno*, 276 F.3d at 723; *see Georgia v. Meadows*, --- F. Supp. 3d ---, 2023 WL 5829131, at *2–3 (N.D. Ga. Sept. 8, 2023) (recognizing the strong judicial policy against federal interference with state criminal proceedings); *Mnuk v. Texas*, No. A-14-CV-1128, 2015 WL 1003863, at *2 (W.D. Tex. Mar. 5, 2015) ("Only a very small class of criminal cases are removable to federal court."). "When a defendant removes a criminal prosecution from state court, it is incumbent upon the United States District Court" to examine the notice promptly, *Texas v. Kearns*, No. 5:14-CV-27, 2014 WL 258786, at *1 (W.D. Tex. Jan. 23, 2014) (citation omitted), and if it appears on the face of the notice and any exhibits that removal shall not be permitted, the court *shall* summarily remand the case to the state court, 28 U.S.C. § 1455(b)(4). "If at any time before final judgment it appears that the district court lacks subject matter

14

jurisdiction, the case *shall* be remanded." 28 U.S.C. § 1447(c) (emphasis added).

This Court reviews a district court's order remanding a case to state court de novo. *Kruebbe*, 692 F. App'x at 175. This Court "may affirm the district court's rulings on any basis supported by the record." *Total Gas & Power N. Am., Inc. v. Fed. Energy Regulatory Comm'n*, 859 F.3d 325, 332 (5th Cir. 2017); *see Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842 (1984) (an appellate court "reviews judgments, not opinions"); *Davis v. Scott*, 157 F.3d 1003, 1005 (5th Cir. 1998).

## II.    The Standard Governing Stay Requests

"A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. A notice of removal does not stay the state court's proceedings. 28 U.S.C. § 1455(b)(3). Moreover, a request for a stay "is not available as a matter of right, and equity must be sensitive to the State's strong interest in enforcing its criminal judgments without undue interference from the federal courts." *Hill v. McDonough*, 547 U.S. 573, 583–84 (2006) (citing *Nelson v. Campbell*, 541

U.S. 637, 649–50 (2004)). Assuming this Court has jurisdiction to grant a stay of execution, Renteria must satisfy all the requirements for a stay, including a showing of a significant possibility of success on the merits. *Id.* (citing *Barefoot v. Estelle*, 463 U.S. 880, 895–96 (1983)). When a stay of execution is requested, a court must consider:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Nken v. Holder*, 556 U.S. 418, 434 (2009) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)). "In a capital case, the movant is not always required to show a probability of success on the merits, but he must present a substantial case on the merits when a serious legal question is involved and show that the balance of the equities, i.e., the other three factors, weighs heavily in favor of granting a stay." *Garcia v. Castillo*, 431 F. App'x 350, 355 (5th Cir. 2011) (cleaned up).

A federal court must also consider "the State's strong interest in proceeding with its judgment" and "attempt[s] at manipulation," as well as "the extent to which the inmate has delayed unnecessarily in bringing the claim." *Nelson*, 541 U.S. at 649–50. Indeed, "there is a strong

16

presumption against the grant of a stay where a claim could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay." *Id.* at 650.

## ARGUMENT

Renteria seeks removal to federal court of a postconviction, post-mandate, ministerial state court proceeding setting an execution date. *See generally* Br. for Appellant. The district court correctly rejected Renteria's untimely and baseless request. This Court should affirm the district court and deny a stay of execution.

## I.   The District Court Properly Found Renteria's Notice of Removal Untimely and Baseless.

The district court's holdings that Renteria's notice of removal was untimely and unauthorized were correct for several reasons. First, Renteria's request was indeed untimely, and he failed to show the court had jurisdiction to entertain his request decades after his trial and all his appeals concluded and where he sought to remove a postconviction, post-mandate, ministerial state court proceeding scheduling an execution date, not a criminal prosecution. *See* 28 U.S.C. § 1455(b)(1). Second, his notice was facially inadequate to justify removal because it did not allege a denial of a right that arose under a federal law that provides for specific

rights stated in terms of racial equality.[3] Third, Renteria failed to show he was unable to enforce any relevant federal right in state court. The district court's orders remanding Renteria's case should be affirmed.

### A. Renteria's notice of removal was untimely, and the district court lacked jurisdiction to consider it.

First, Renteria's notice of removal was excessively untimely, and the nature and untimeliness of the notice underscored the absence of jurisdiction in the district court. His notice did not seek removal of his *criminal prosecution* to federal court—his prosecution occurred decades ago, and his appeals are long final. *See Renteria*, 2011 WL 1734067, at *1; *Prosecution*, Black's Law Dictionary (11th ed. 2019) ("A criminal proceeding in which an accused person is tried"). Removal of Renteria's prosecution was simply an impossibility. Instead, Renteria sought removal to federal court of a ministerial state court postconviction proceeding. But he has identified no precedent that indicates such a

---

[3]   Renteria suggests the district court initially found his notice of removal was facially sufficient because it ordered a hearing. Br. for Appellant at 3. His suggestion is belied by the court's order that soon followed, which canceled the hearing after Respondents filed a Motion for Summary Remand, ROA.273–74, and its later order denying Renteria's motion for reconsideration. ROA.323–36. Indeed, the statutory procedures for removal proceedings explicitly provides that a district court "shall" remand a case if "at any time before final judgment it appears that the district court lacks subject matter jurisdiction[.]" 28 U.S.C. § 1447(c).

removal is permissible or that the district court had jurisdiction to consider it since judgment was entered by the state court and became final years ago.[4] Many courts have held that § 1455 does not provide for postconviction removal.[5] The many cases in which courts have so held

---

[4]    *See Idaho v. Oelker*, No. 3:20-CV-383, 2020 WL 6081885, at *1 (D. Idaho Oct. 15, 2020) ("[E]ven if Oelker's criminal case has come to an end, this Court does not have jurisdiction. Any disagreements Oelker has with his state court proceedings must be taken up in that forum[.]"); *Tyler v. Schollmeyer*, No. 4:19-CV-2621, 2019 WL 5424379, at *4–5 (E.D. Mo. Oct. 23, 2019) ("Removal jurisdiction can only be properly exercised if the state court case is still ongoing. That is, if the state court proceedings for which removal is sought is already completed, the case must be dismissed for lack of jurisdiction. . . . Plaintiff has attempted to attack his original conviction in a number of different ways, including state postconviction actions, federal habeas petitions, and removals to federal court. In the instant case, Plaintiff has received adverse judgments from the state courts, and is now attempting to obtain a federal forum by characterizing this action as one for removal, when he is actually seeking to overturn those rulings. Removal in such circumstances is not permissible.") (citations omitted); *Williams v. Holloway*, No. 3:14-CV-126, 2014 WL 5529742, at *2 (E.D. Vir. Oct. 31, 2014) ("At the time Williams filed the Notice of Removal, there was no pending criminal prosecution against him in the Circuit Court to be removed to federal court. To the contrary, Williams's criminal prosecution concluded in 2005 when the Circuit Court entered the judgment of conviction."); *Dema v. Arizona*, No. CV-07-0726, 2008 WL 2941167, at *10 (D. Ariz. July 25, 2008) (applying 28 U.S.C. § 1446); *see also Massachusetts v. Thomas*, No. 23-10789, 2023 WL 4204432, at *2 (D. Mass. June 27, 2023); *cf. Oviedo v. Hallbauer*, 655 F.3d 419, 423–24 (5th Cir. 2011) (stating in a civil case, "[r]emoval is simply not possible after a final judgment and the time for direct appellate review has run.").

[5]    *See, e.g., Williams v. Corrigan*, No. 22-2096, 2023 WL 3868657, at *2 (6th Cir. May 12, 2023) ("Williams's removal petition was untimely given that it was filed [fifteen] years after his conviction."); *Kansas v. Gilbert*, Nos. 22-3213 & 22-3230, 22-3229 & 22-3249, 2023 WL 2397025, at *1 (10th Cir. Mar. 8, 2023) ("[B]ecause the criminal cases that Gilbert attempted to remove from state

stand in stark contrast to the sheer absence of *any* support for Renteria's interpretation of § 1455.

Moreover, § 1455(b)(1) requires that a "notice of removal of a criminal prosecution shall be filed not later than [thirty] days after the arraignment in the State court, or at any time before trial, whichever is earlier, except for good cause[.]" Renteria was indicted, convicted, and sentenced to death *twenty years ago. See Renteria v. State*, 2011 WL 1734067, at *1. His punishment retrial resulted in a second death

---

court were closed, the district court correctly concluded it had no choice but to dismiss the cases."); *Delaware v. Desmond*, 792 F. App'x 241, 243 n.1 (3d Cir. 2020) (agreeing with district court's conclusion that postconviction removal petition was untimely); *Scott v. Artis*, 2023 WL 6973870, at *2 (E.D. Mich. Oct. 23, 2023) ("Petitioner's attempt to remove his 1998 criminal case to federal court is untimely." (citing *Corrigan*, 2023 WL 3868657, at *2)); *Setts v. Dixon*, No. 1:23-CV-99, 2023 WL 4109780, at *1 (N.D. Fla. May 30, 2023); *Alexander v. MN*, No. 22-CV-740, 2022 WL 1572035, at *1 (D. Minn. Mar. 29, 2022) ("Alexander's state-court criminal proceedings, including his trial, ended years ago. There is nothing pending for Alexander to remove to federal court."), *report and recommendation adopted*, No. 22-740, 2022 WL 1570713, at *1 (D. Minn. May 18, 2022); *Miller v. Louisiana*, No. 18-14251, 2019 WL 1293273, at *2 (E.D. La. Mar. 1, 2019) ("[T]he statute clearly does not contemplate removal of a case *after* conviction." (emphasis in original)), *report and recommendation adopted*, 2019 WL 1277522, at *1 (E.D. La. Mar. 20, 2019); *Barber v. Vance*, No. 3:16-CV-2105, 2019 WL 267874, at *2 (D. Or. Jan. 18, 2019); *Larose v. Missouri*, No. 4:17-CV-1962, 2017 WL 3217136, at *2–3 (E.D. Miss. July 28, 2017) (petition seeking removal of state postconviction proceeding was untimely because those proceedings could "no longer be considered a state criminal prosecution that can be removed pursuant to 28 U.S.C. § 1443"); *Maze v. Tennessee*, No. 3:15-CV-698, 2015 WL 3989125, at *2 (M.D. Tex. June 30, 2015) ("[S]ince the matter is already on appeal, it is perfectly clear that removal of this action should not be permitted.").

sentence in 2008. *Id.* His direct appeal concluded in 2011. *Id.* His state habeas proceedings concluded almost ten years ago. *See Ex parte Renteria*, 2014 WL 7188848, at *2. His federal habeas proceedings concluded almost three years ago. *Renteria v. Davis*, 141 S. Ct. 1412 (2021). He has entirely failed to articulate any statutory or equitable basis on which to permit removal of a ministerial postconviction proceeding where the statute provides for removal of a criminal prosecution that is sought *pretrial*.[6] 28 U.S.C. § 1455(b)(1). Therefore, the district court properly held the removal statute does not reach postconviction. ROA.330–33.

Renteria argues the district court erred in holding his removal request was untimely because the court purportedly relied on dicta from

---

[6]    Notably, § 1455(c) contemplates that a removal petitioner will be in custody on *process* issued by a state court. Renteria is not in state custody pursuant to process—he is in custody pursuant to a decades-long final state court *judgment of conviction. See Renteria v. State*, 2011 WL 1734067, at *1. Renteria failed to articulate how a federal court could have jurisdiction to order Respondents to either transport him more than 800 miles to El Paso for a hearing or surrender custody to the United States Marshals. *See* 28 U.S.C. § 1455(c); *cf. Shoop v. Twyford*, 596 U.S. 811, 822–24 (2022) (holding federal district court erred in ordering transport of state prisoner in § 2254 proceeding, especially where it delays resolution of case and presents serious risk to public safety); *Beatty v. Lumpkin*, 52 F.4th 632, 634 (5th Cir. 2022) (holding federal district court lacks jurisdiction to order state prisoner unshackled absent pending § 2254 litigation).

the Supreme Court's opinion in *State of Ga. v. Rachel*, 384 U.S. 780 (1966), and because the court relied on legislative history to hold postconviction removals are impermissible. Br. for Appellant 15–24. Neither argument shows any error in the district court's judgment.

First, Renteria fails to justify his construction of § 1455(b)(1) such that a state criminal proceeding can be removed *any time*—even decades—postconviction. Assuming the statute is unambiguous as Renteria suggests, it unambiguously provides only for removal of criminal prosecutions *before* trial. 28 U.S.C. § 1455(b)(1). Specifically, the statute provides for removal of a criminal prosecution—not an appeal—*not later than* thirty days after arraignment, or any time *before* trial, whichever date is *earlier. Id.* Thus, the statute plainly envisions only removals of state court criminal prosecutions prior to trial. *See id.* It provides an exception for good cause, *id.*, but Renteria provides no reason to conclude Congress intended the statute's oblique allowance for filing "at a later time" to drastically alter the meaning of a "criminal prosecution" or to indefinitely allow for removal to federal court of state court appeals, state habeas proceedings, or ministerial state court proceedings scheduling execution dates. Such postconviction proceedings

are commonplace in capital cases yet, under Renteria's interpretation of § 1455(b)(1), the mere existence of those proceedings means "good cause" may exist to escape the statute's pre-trial time limits. Such an interpretation of the statute is baseless and absurd.

Indeed, it is entirely illogical to suggest Congress intended § 1455(b)(1)'s opening clause to restrict timeliness of a removal petition to pre-trial deadlines but for the good cause exception to swallow the rule by extending the time for removal indefinitely even after exhaustion of postconviction remedies. The only logical conclusion is that the good cause exception must relate to the pre-trial period. Consequently, irrespective of whether the Supreme Court's statement in *Rachel* the district court cited was dicta, the court did not err in relying on it—as well as numerous lower court opinions—in finding Renteria's notice of removal untimely. ROA.300–03. Renteria cannot identify any error in the absence of controlling or persuasive authority in his favor.

Second, because Renteria's proposed interpretation of § 1455(b)(1) would plainly yield such absurd and unprecedented results that would defeat the intent of the statute, the district court was permitted to consider either canons of construction or legislative history. *See United*

*States v. Moore*, 71 F.4th 392, 395 (5th Cir. 2023). And as the district court noted, legislative history plainly indicates that § 1455(b)(1) does not allow for postjudgment removal. ROA.330–31.

Moreover, application of canons of statutory construction yields the same inescapable conclusion. *See Yates v. United States*, 574 U.S. 528, 543–45 (2015) (discussing the principles of construction *noscitur a sociis*, which counsels courts "to avoid ascribing to one word a meaning so broad that it is inconsistent with its accompanying words, thus giving unintended breadth to the Acts of Congress," and *ejusdem generis*, which instructs that "where general words follow specific words in a statutory enumeration, the general words are usually construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words") (cleaned up). As discussed above, it is flatly illogical to ascribe as broad a meaning to the phrase "at a later time" as Renteria does. *See id.* The correctness of the district court's interpretation of the statute is confirmed by the conspicuous absence in Renteria's briefing of *any* citation to a case in which postconviction removal of a criminal case was permitted. Indeed, Renteria relies only on a twenty-seven-year-old secondary source for the proposition that § 1455(b)(1) "breathe[d] new

life" into postconviction removal.[7] Br. for Appellant at 17. But as discussed above, the absence of any supporting precedent in the forty-six years following the statute's amendment has proven the breath to be anoxic.

Renteria also argues § 1455(b)(1)'s use of the phrase "at a later time" unambiguously provides for postconviction removal because § 1455(b)(3) indicates a state court prosecution can proceed except that a judgment of conviction cannot be entered unless the prosecution is first remanded. Br. for Appellant at 19–20. But this provision confirms that removals can only occur prior to judgment because the statute presupposes that, for a case to be removable, judgment has not been entered. *See* 28 U.S.C. § 1455(b)(3). And nothing in the removal statute provides a federal court authority to invalidate or reopen a final state court judgment.

---

[7]    Renteria also asserts that this Court "took note" of the statute's amendment. Br. for Appellant at 17 (citing *Butler v. King*, 781 F.2d 486, 487 (5th Cir. 1986)). In *Butler*, this Court addressed a pre-trial removal that occurred prior to the 1977 amendment to the removal statute. 781 F.2d at 489. This Court did not address whether the amendment to the statute created the open-ended avenue for removal Renteria proposed it did. *See id.* ("We take solace in the fact that Congress acted in 1977 to prevent abuses of the removal procedure and that this case could not arise today on identical facts.").

Renteria literally suggests capital "criminal prosecutions" are never final "until the sentence is actually carried out," Br. for Appellant at 20–22, but such a suggestion is entirely spurious.[8] *See Staley v. State*, 420 S.W.3d 785, 795 (Tex. Crim. App. 2013) (general jurisdiction is not restored in the trial court when a conviction has been affirmed and mandate has issued); *Ex parte Johnson*, 12 S.W.3d 472, 473 (Tex. Crim. App. 2000) ("A direct appeal is final when the mandate from the court of appeals issues."). Section 1455 does not differentiate between capital and non-capital judgments. Renteria's argument improperly conflates finality of a capital judgment with the execution of it, and he provides no support for the proposition that a capital conviction is not final until an execution is carried out. *See In re State ex rel. Hicks*, 2023 WL 6074482, at *2. Indeed, the availability of postconviction avenues to "frustrate" a state's interest in finality does nothing to prove a capital conviction does not become final until the inmate has been executed.

---

[8]     For instance, Renteria argues that legal proceedings—i.e., the setting of an execution date—follow the affirmation of a capital conviction. Br. for Appellant 20–21. This does nothing to show capital convictions are uniquely not final until the defendant dies. For example, the duty of some individuals convicted of a reportable sex offense to register "ends when the person dies." Tex. Code Crim. Proc. art. 62.101(a). This does not mean convictions for those sex offenses are nonfinal until the offender dies.

Lastly, Renteria argues his expansive view of the availability of removal under § 1455 is appropriate because, otherwise, federal courts would be forced to make difficult predictive judgments about whether a state court will protect a defendant's rights, and the 1977 amendment to the removal statute eases that difficulty. Br. for Appellant at 24 ("Voila!"). But he is too clever by half. Again, he provides no supporting precedent from the forty-six years that followed the amendment. Indeed, the Supreme Court in *Johnson* explained that removals under § 1443(1) must be based on a denial or inability to enforce a specified federal right in state court as expressed in a state statute or constitutional provision "rather than a denial first made manifest in the trial of the case," 421 U.S. at 219 (quoting *Rachel*, 384 U.S. at 803), and Renteria fails to identify precedent indicating the standard has been relaxed. Renteria also fails to provide any limiting principle, e.g., by identifying any state court proceeding that would *not* be removable, under his interpretation of the removal statute. And if Renteria's interpretation held sway, removal of postconviction proceedings would be so commonplace it would render federal habeas proceedings obsolete. *Cf. Tyler*, 2019 WL 5424379, at *4–5 ("In the instant case, Plaintiff has received adverse judgments

from the state courts, and is now attempting to obtain a federal forum by characterizing this action as one for removal, when he is actually seeking to overturn those rulings. Removal in such circumstances is not permissible.").

Relatedly, Renteria has not attempted to articulate what procedure he envisions could occur in federal court pursuant to a removal of a ministerial state court proceeding scheduling an execution. Again, he has already been prosecuted—that occurred more than twenty years ago. No criminal trial or proceeding remains to be conducted. Also, a federal court in removal proceedings could not enjoin the state from carrying out Renteria's execution. 28 U.S.C. § 2283 ("A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."); 28 U.S.C. § 1455(b)(3); *see also Meadows*, 2023 WL 5829131, at \*2. The district court could also not entertain a successive federal habeas petition. 28 U.S.C. § 2244(b)(3)(A); *see Felker v. Turpin*, 518 U.S. 651, 662 (1996) (a court's "authority to grant habeas relief to state prisoners is limited by § 2254, which specifies the conditions under which such relief may be

granted to 'a person in custody pursuant to the judgment of a state court''') (internal citations omitted).

To the extent Renteria envisions making a second attempt—after failing in state court—to compel the District Attorney's Office to provide him access to its files, a federal court lacks jurisdiction to provide such a remedy because it would be in the form of mandamus directed to a nonparty state court or a state official. *See Corrigan*, 2023 WL 3868657, at *2 ("[T]he district court lacked any authority to order the [state] trial court to rule on Williams's pending post-conviction motions." (citing *Woods v. Weaver*, 13 F. App'x 304, 306 (6th Cir. 2001)); *Pruett v. Choate*, 711 F. App'x 203, 206 n.10 (5th Cir. 2017); *see also Twyford*, 596 U.S. at 822–24 (holding order that allows a prisoner to search for new evidence is not necessary or appropriate in aid of a federal court's jurisdiction when the prisoner has not shown the desired evidence would be admissible in connection with a particular claim for relief). Indeed, such a remedy would effectively nullify the CCA's mandamus judgment.[9] *See*

---

[9]    For example, Renteria argued there are unresolved equal protection claims that arise from the state court's proceeding. ROA.19. But he has not even attempted to explain how a federal court has jurisdiction to resolve any such claim. And if no state court currently has jurisdiction to resolve such claims, it is because Renteria failed to timely avail himself of the available

*Lance v. Dennis*, 546 U.S. 459, 463 (2006) (an "aggrieved litigant cannot be permitted to do indirectly what he no longer can do directly" (citation omitted)); *Moye v. Clerk, DeKalb Cty. Superior Court*, 474 F.2d 1275, 1276 (5th Cir. 1973) (per curiam). Renteria provides no basis, or even an explanation, for how a federal court could provide such a remedy. For the same reason, Renteria's effort to remove the state court proceeding is contrary to the *Rooker-Feldman* doctrine.[10] *See Oelker*, 2020 WL 6081885, at *2.

Renteria's complaint in state court was primarily that he was not provided access to the prosecution's file, which request was spurred by disclosure by the prosecution to Renteria in 2018 of a witness statement.

---

processes to do so, e.g., Texas Code of Criminal Procedure, article 11.071 § 5. Notably, after the district court rejected Renteria's removal request, he filed in state court a habeas application in which he argued the state court's proceedings scheduling his execution violated his rights to due process and equal protection. Appl. for Writ of Habeas Corpus Under Art. I, § 12 of the Tex. Constitution & Tex. Code of Crim. Proc. Art. 11.05 at 93–107, *Ex parte Renteria*, No. 20020D00230 (327th Dist. Ct., El Paso, Cty., Nov. 2, 2023). That filing undercuts Renteria's argument that he has no state court forum in which to seek to vindicate his rights.

[10]    *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415 (1923) (holding that the jurisdiction of the district court is strictly original); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 476, 482 (1983) (holding a United States district court has no authority to review final judgments of a state court in judicial proceedings).

*See Renteria v. Davis*, 814 F. App'x at 834–35. Even ignoring the excessive untimeliness of, and the district court's lack of jurisdiction to consider, his request, Renteria failed to show good cause for his extraordinary and unprecedented request to remove a ministerial, post-mandate proceeding from state court to federal court where he did not seek a remedy in state court for *years* after he was provided the witness statement.[11] Any holding to the contrary would countenance obvious and unwarranted delay. *See Shinn v. Martinez Ramirez*, 596 U.S. 366, 390 (2022) (explaining a federal court may *never* "needlessly prolong" a state prisoner's collateral attack on his conviction).

The district court correctly held Renteria's notice of removal was untimely. ROA.273–74, 330–33. Therefore, this Court should affirm the district court's orders remanding Renteria's case to state court. *See Smith v. Winter*, 717 F.2d 191, 199 (5th Cir. 1983) (affirming district court's remand order because it failed as a matter of law and, consequently, a

---

[11] Moreover, Renteria's assertion that his notice of removal is timely because the CCA's opinion in the mandamus proceeding was "novel" is inaccurate. ROA.18. In holding the trial court lacked jurisdiction to withdraw its execution order and to issue a discovery order, the CCA relied on its "well settled" precedent that trial courts do not retain general jurisdiction after a conviction is affirmed and mandate is issued. *In re State ex rel. Hicks*, 2023 WL 6074482, at *2 (citing *Staley*, 420 S.W.3d at 795).

"remand [to the district court] for an evidentiary hearing would be pointless").

## B. Renteria identifies no valid basis for removal of the state court's proceeding.

Renteria's notice of removal complained that the CCA held in the mandamus proceeding that the state trial court had "no freewheeling jurisdiction to seek to safeguard Renteria's Fourteenth Amendment rights," and he asserted his Fourteenth Amendment right to equal protection as grounds for removal of the state court proceedings. *See* Br. for Appellant at 27. His request was frivolous under binding precedent.

Renteria relied on 28 U.S.C. § 1443(1) as the basis for removal. ROA.4. But to remove a case under that provision, the removing party "must show both that: (1) the right allegedly denied [ ] arises under a federal law providing for specific rights stated in terms of racial equality; and (2) the removal petitioner is denied or cannot enforce the specified federal rights in the state courts due to some formal expression of state law." *Oliver*, 891 F. Supp. 2d at 844. Under the first requirement, the right asserted must "arise under laws phrased specifically in terms of racial equality rather than in general terms of equality for all citizens comprehensively," so "broad [F]irst [A]mendment or [F]ourteenth

[A]mendment claims do not satisfy the test[.]" *Winter*, 717 F.2d at 194; *see Johnson*, 421 U.S. at 219; *United States v. Belc*, No. 22-12558, 2023 WL 6232474, at *2 (11th Cir. Sept. 26, 2023) (neither the right to equal protection nor the federal civil rights statute, 42 U.S.C. § 1983, provide for specific rights in terms of racial equality); *Delavigne v. Delavigne*, 530 F.2d 598, 600–01 (4th Cir. 1976) (holding that only race-related discrimination claims are a basis for removal under § 1443(1)). Indeed, "[t]he civil rights removal statute does not require and does not permit the judges of the federal courts to put their brethren of the state judiciary on trial." *City of Greenwood v. Peacock*, 384 U.S. 808, 828 (1966); *see Doe v. Berry*, 967 F.2d 1255, 1258 (8th Cir. 1992).

Consequently, Renteria's broad assertions of the deprivation of the right of equal protection were not adequate under § 1443(1) where he did not claim racial discrimination.[12] Indeed, his Fourteenth Amendment

---

[12]    *See Peacock*, 384 U.S. at 827–28 ("It is not enough to support removal under [§] 1443(1) to allege or show that the defendant's federal equal civil rights have been illegally or corruptly denied by state administrative officials in advance of trial, that the charges against the defendant are false, or that the defendant is unable to obtain a fair trial in a particular state court."); *Winter*, 717 F.2d at 194; *Mackey v. Massachusetts*, 582 F. Supp. 3d 1, 4 (D. Mass. 2022); *Thorp Finance Corp. v. Lehrer*, 587 F. Supp. 533, 534 (E.D. Wis. 1984); *Whitestone Sav. and Loan Ass'n v. Romano*, 484 F. Supp. 1324, 1326 (E.D. N.Y. 1980). Moreover, matters that are discretionary with public officials are generally not appropriate for removal. *See Johnson v. People of State of*

and equal protection arguments were facially inadequate to justify removal.[13] "There is not the merest hint" from Renteria's allegations that any alleged deprivation of a right to due process or equal protection was based on a violation of racial equality. *State of Iowa v. Johnson*, 976 F. Supp. 812, 817 (N.D. Iowa 1997). Removal of the state court proceeding

---

*Cal.*, 473 F.2d 1044, 1044–45 (9th Cir. 1973) (allegation that state law invested state courts with discretion to impose different punishments for the same offense committed by different persons in similar situations insufficient to justify removal); *People of State of N.Y. v. Hutchinson*, 360 F.2d 759, 762 (2d Cir. 1966) (allegation that bail was set extraordinarily high because of defendant's involvement in civil rights demonstrations did not justify removal); *Oliver*, 891 F. Supp. 2d at 845; *People of State of N.Y. v. Baker*, 354 F. Supp. 162, 168 (S.D. N.Y. 1973) (claims of discriminatory prosecution provide no basis for removal unless there is an allegation and proof that race was the reason for the discrimination); *Denson v. Williams*, 341 F. Supp. 180, 182 (S.D. Tex. 1972) (holding that an equal protection challenge to state laws restricting the rights of felons to vote and hold office was not removable because the laws did "not operate as to deprive citizens of constitutional rights because of their race").

[13]    The state trial court did not base its order compelling the District Attorney's Office to provide Renteria access to its files on a finding of racially motivated disparate treatment. ROA.31–33. Nor did the court identify any law that provides a right to access a prosecuting office's files much less a statutory right that is stated in terms of racial equality. ROA.31–33; *see* 28 U.S.C. § 1443(1). Moreover, much of Renteria's notice of removal complained of what he perceives as a lack of process during the state court's proceeding. ROA.8–16. But what process is required under the statutory provisions regarding the setting of an execution date is a purely state-law matter, and a ministerial one at that. *See Belyeu v. Johnson*, 82 F.3d 613, 615 (5th Cir. 1996) ("The setting of the date for execution is not a critical part of the sentencing proceedings, but is rather a ministerial act implementing the judgment earlier entered."). And, again, Renteria's notice identified no relevant protected right that is stated in terms of racial equality. *See* 28 U.S.C. § 1443(1).

"simply is not the proper vehicle to assert in federal court the civil rights claims [Renteria] may believe" he has. *Id.*

Renteria argues the district court erroneously conflated "the need to have 'a right' and the need for that right to arise 'under any law providing for the equal rights of citizens.'" Br. for Appellant at 25. The problem for Renteria, however, is that the Supreme Court unambiguously requires a removal petitioner under § 1443(1) to demonstrate "that the right allegedly denied the removal petitioner arises under a federal law 'providing for specific civil rights stated in terms of racial equality.'" *Johnson*, 421 U.S. at 219 (quoting *Rachel*, 384 U.S. at 792). And "[c]laims that prosecution and conviction will violate rights under constitutional or statutory provisions of general applicability or under statutes not protecting against racial discrimination, will not suffice." *Id.*

Moreover, Renteria's complaint is founded in the CCA's jurisdictional holding, which raises no federal constitutional issue at all. *See Howlett By and Through Howlett v. Rose*, 496 U.S. 356, 372 (1990) ("When a state court refuses jurisdiction because of a neutral state rule regarding the administration of the courts, we must act with utmost

caution before deciding that it is obligated to entertain the claim. . . . The States thus have great latitude to establish the structure and jurisdiction of their own courts."); *see also Medina v. California*, 505 U.S. 437, 444 (1992) ("[I]t has never been thought that [decisions under the Due Process Clause] establish this Court as a rule-making organ for the promulgation of state rules of criminal procedure.") (alteration in original) (quoting *Spencer v. Texas*, 385 U.S. 554, 564 (1967)); *Rhoades v. Martinez*, No. 21-70007, 2021 WL 4434711, at *2 (5th Cir. Sept. 27, 2021) ("[A] declination to rule for want of jurisdiction cannot be reframed as a denial of due process rooted in the state law."). Renteria's failure to point to any relevant law to support removal renders his removal request frivolous.

Renteria references the Civil Rights Act of 1964.[14] Br. for Appellant at 26. But Renteria was not prosecuted for protesting—he was prosecuted for murdering a young child. And his removal petition did not allege his

---

[14]    *See Illinois v. Young*, 2012 WL 2031129, at *2 (C.D. Ill. June 6, 2012) ("The paradigmatic case is of civil rights demonstrators arrested and prosecuted for trespass as a result of participating in a sit-in, which the Civil Rights Act of 1964 expressly authorizes and immunizes from state prosecution. Here, Defendant cannot even begin to argue that he had a federal statutory right to possess a gun as a felon, since federal law also prohibits felons from possessing guns in most situations." (citation omitted)).

prosecution for capital murder violated the Civil Rights Act of 1964—nor could it. *See id.* He provides no basis on which to conclude he satisfied the first part of the § 1443(1) test where he relied solely on a broad assertion of the right to equal protection. *See Winter*, 717 F.2d at 194. Indeed, his argument that his Fourteenth Amendment right to equal protection is adequate under § 1443(1), Br. for Appellant at 26–28, is *squarely* foreclosed by Supreme Court and Fifth Circuit precedent, rendering his removal request frivolous.[15] *See Johnson*, 421 U.S. at 219; *County of Yazoo, Miss. v. Prewitt*, No. 23-60073, 2023 WL 7381440, at *1 (5th Cir. Nov. 7, 2023); *McMullen v. Cain*, 726 F. App'x 257, 257–58 (5th Cir. 2018) ("As McMullen concedes, his claims in this case do not arise under a federal law pertaining specifically to racial equality, yet he asks that we disregard the Supreme Court's construction of § 1443(1) as error. This we cannot do."); *Cabello v. Texas*, 71 F. App'x 315, 316 (5th Cir. 2003) ("Cabello argues that 28 U.S.C. § 1443 does not require allegations of racial discrimination. Cabello's argument is contrary to *Johnson*[.]");

---

[15]     *See also Miller v. Lambeth*, 443 F.3d 757, 761–62 (10th Cir. 2006); *St. James Associates v. Larsen*, 67 F. App'x 684, 686 (3d Cir. 2003); *Alabama v. Conley*, 245 F.3d 1292, 1295–96 (11th Cir. 2001); *Chestnut v. People of State of N.Y.*, 370 F.2d 1, 3–4 (2d Cir. 1966).

*Winter*, 717 F.2d at 194; *Robertson v. Ball*, 534 F.2d 63, 66 n.5 (5th Cir. 1976) (suggesting this Court "look with favor upon a summary motion to dismiss, as frivolous, an appeal from a remand when the removal purportedly based on § 1443 does not even colorably fall within the strict tests set out in *Johnson*, *Georgia*, and *Greenwood*").

Renteria cites *Williams v. State of Miss.*, 608 F.2d 1021, 1022 (5th Cir. 1979), for the proposition that the Equal Protection Clause is "a federal law providing for specific civil rights stated in terms of racial equality." Br. for Appellant at 27. But this Court in *Williams* said no such thing. Instead, it assumed *arguendo* that "[t]he right to have a grand jury selected without regard to race can be invoked by 42 U.S.C.A. § 1981, a law guaranteeing equal civil rights and stated in terms of racial equality." 608 F.2d at 1022. This has no bearing whatsoever on Renteria's baseless request, which is contrary to binding precedent.

As with his timeliness argument, Renteria's argument regarding § 1443(1) asks this Court to simply ignore decades of precedent. He

provides no justification for this Court to depart from its and the Supreme Court's precedent. This Court should affirm the district court's orders.[16]

## C.   Renteria was not denied or unable to enforce any protected right in state court.

Renteria also failed to show he was denied or was unable to enforce any protected right in state court. Again, as discussed above, Renteria fails to even allege he was denied *any* right that arose under a law providing for specific federal rights stated in terms of racial equality. 28 U.S.C. § 1443(1). The CCA held the trial court lacked jurisdiction in the postconviction, ministerial proceedings to safeguard Renteria's right to equal protection—not any right to racial equality. *In re State ex rel. Hicks*, 2023 WL 6074482, at *3. Necessarily then, he cannot show he was improperly denied any such right in state court or prevented from vindicating any such right in state court. The district court correctly concluded Renteria failed the second part of the *Johnson* test because he

---

[16]   Section 1455(b)(2) states that a "failure to state grounds [for removal] that exist at the time of the filing of the notice shall constitute a waiver of such grounds, and a second notice may be filed only on grounds not existing at the time of the original notice." Renteria's notice of removal failed to articulate *any* valid basis for removal, including an allegation that he was denied a right that arose under a federal law providing for specific rights stated in terms of racial equality. Renteria has, therefore, waived any allegation that removal was appropriate due to such a claim.

failed to identify any *relevant* right under § 1443(1) the state court prevented him from vindicating. *See Prewitt*, 2023 WL 7381440, at *1; *Kearns*, 2014 WL 258786, at *2 ("Second, Kearns does not explain how Texas courts are inadequate to enforce or vindicate his federal rights to racial equality."); *Barber*, 2019 WL 267874, at *2 ("Plaintiff does not allege that his criminal prosecution is a violation of his racial civil rights, nor that Oregon has a state statute or constitutional provision that commands it to ignore federal racial civil rights.").

Even if his broad complaints of denial of a right to equal protection and due process could satisfy § 1443(1), he utterly fails to show the state court processes precluded him from seeking to vindicate such rights. As the CCA explained, the trial court lacked jurisdiction to issue a discovery order because it had no relevant operative pleading before it that provided it jurisdiction. *In re State ex rel. Hicks*, 2023 WL 6074482, at *2–3. Nothing precluded Renteria from filing such a pleading, e.g., seeking authorization under article 11.071 § 5 to file a subsequent application for a writ of habeas corpus, as he has now done. Renteria's choice to withhold the filing of such a pleading—despite having been provided more than five years ago the witness statement that formed the

basis of his request for access to the District Attorney's Office's file—does not mean that the state court's process denied him any right or precluded him from enforcing any protected right. His dilatory tactics do not justify the novel and extraordinary remedy of removal of a state court postconviction proceeding to federal court. This Court should affirm the district court's orders remanding this case to the state court.

\* \* \*

"It is worth contemplating what the result would be if" Renteria's "strained interpretation of [§] 1443(1)" were to prevail. *Peacock*, 384 U.S. at 832. For one, unsuccessful habeas petitioners could require federal district courts to sit in judgment of Texas trial courts and the CCA. As explained above, federal courts cannot do so. And it is also worth remembering that this case arises following a final state court judgment—not in an original criminal prosecution, a direct appeal, or a habeas proceeding. Indeed, Renteria would have this Court create a new and extraordinary remedy, based on a broad allegation of the denial of due process or equal protection, which would effectively create an avenue to directly appeal a state court's resolution of a purely state-law matter that arose in a mandamus proceeding long after a conviction is final. Such

efforts to turn federal district courts into "super state supreme court[s]" would become commonplace. *Porter v. Estelle*, 709 F.2d 944, 957 (5th Cir. 1983). Renteria cites no precedent for such an expansion of removal jurisdiction or for such an end-run around the limitations of federal habeas jurisdiction. This Court should not countenance Renteria's novel and unjustified expansion of federal court supervisory authority.

## II.  The Removal Statute Does Not Provide Jurisdiction to Grant a Stay of Execution.

Lastly, Renteria cannot obtain a stay of execution in this removal proceeding because this Court lacks jurisdiction to grant a stay. 28 U.S.C. §§ 1455(b)(3), 2283. Therefore, his motion for a stay of execution must be denied.

Even if this Court could grant a stay of execution, Renteria provides no justification for it to do so. His motion for a stay does nothing but restate his arguments on the merits of his removal appeal. As discussed thoroughly above, his notice of removal and this appeal are frivolous. Therefore, Renteria is not entitled to a stay of execution because he necessarily cannot make a strong showing that he is likely to succeed on the merits. *See Hill*, 547 U.S. at 583–84.

Moreover, Renteria's removal request was plainly dilatory since it was filed more than twenty years after it was required to be filed. 28 U.S.C. § 1455(b); *see Hill*, 547 U.S. at 584. Further, Renteria fails to show he would be substantially harmed without a stay, that the public interest favors a stay, or that the balance of equities favors a stay. As discussed above, Renteria's notice of removal was untimely and baseless. For the same reasons, he cannot show he will be irreparably harmed if denied a stay of execution. *See Walker v. Epps*, 287 F. App'x 371, 375 (5th Cir. 2008) ("[T]he merits of his case are essential to our determination of whether [a prisoner] will suffer irreparable harm if a stay does not issue."). Therefore, this Court should deny Renteria's motion for a stay of execution.

## CONCLUSION

For the above reasons, the Respondents-Appellees request that this Court affirm the district court's judgment and deny Renteria's motion for a stay of execution.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

43

BRENT WEBSTER
First Assistant Attorney General

JOSH RENO
Deputy Attorney General
for Criminal Justice

EDWARD L. MARSHALL
Chief, Criminal Appeals Division

s/ Jefferson Clendenin
JEFFERSON CLENDENIN
Assistant Attorney General
Texas Bar No. 24059589
   *Counsel of Record*

P.O. Box 12548, Capitol Station
Austin, Texas 78711
Telephone: (512) 936-1600
Fax: (512) 320-8132
Email: *jay.clendenin@oag.texas.gov*

*Attorneys for Respondents-Appellees*

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)(7)(B)

I do hereby certify that this brief complies with Federal Rule of Appellate Procedure 32(a)(7)(B) in that it contains 10,368 words, Microsoft Word, Century Schoolbook, 14 points.

s/ Jefferson Clendenin
JEFFERSON CLENDENIN
Assistant Attorney General

## CERTIFICATE OF COMPLIANCE WITH ECF FILING STANDARDS

I do hereby certify that: (1) all required privacy redactions have been made pursuant to Fifth Circuit Rule 25.2.13; (2) this electronic submission is an exact copy of the paper document; and (3) this document has been scanned using the most recent version of a commercial virus-scanning program and is free of viruses.

s/ Jefferson Clendenin
JEFFERSON CLENDENIN
Assistant Attorney General

## CERTIFICATE OF SERVICE

On November 13, 2023, this brief was served via CM/ECF on all registered counsel and transmitted to the Clerk of the court:

Michael Wiseman
Wiseman & Schwartz, LLP
718 Arch St., Suite 702 North
Philadelphia, PA 19106
wiseman@wisemanschwartz.com

Maureen Franco
Tivon Schardl
Federal Public Defender
Western District of Texas
919 Congress Ave., Suite 950
Austin, TX 78701
tivon_schardl@fd.org

s/ Jefferson Clendenin
JEFFERSON CLENDENIN
Assistant Attorney General