## No. 23-70007

# In the United States Court of Appeals for the Fifth Circuit

DAVID SANTIAGO RENTERIA,

*Petitioner-Appellant,*

v.

BOBBY LUMPKIN, DIRECTOR,
TEXAS DEPARTMENT OF CRIMINAL JUSTICE,
CORRECTIONAL INSTITUTIONS DIVISION; STATE OF TEXAS,

*Respondents-Appellees.*

———————————

Appeal from the United States District Court
for the Western District of Texas, El Paso Division
No. 3:23-cv-2080-FM

———————————

## REPLY BRIEF FOR APPELLANT

———————————

MICHAEL WISEMAN
WISEMAN & SCHWARTZ, LLP
718 Arch Street, Suite 702
North
Philadelphia, PA 19106
215-450-0903
wiseman@wisemanschwartz.com

MAUREEN FRANCO
Federal Public Defender
Western District of Texas

TIVON SCHARDL
Chief, Capital Habeas Unit
SBOT #24127495
919 Congress Ave., Suite 950
Austin, Texas 78701
737-207-3008
tivon_schardl@fd.org

**CAPITAL CASE**
**\*\*EXECUTION SCHEDULED FOR NOV. 16, 2023\*\***

# TABLE OF CONTENTS

Table of Authorities.................................................................ii

Introduction............................................................................ 1

Reply Arguments.................................................................... 4

I.    The State's Misrepresentations of the Record Undermine its Arguments. ......................................................................... 4

II.   The Notice of Removal was not "Untimely" under the Ordinary Public Meaning of 28 U.S.C. § 1455(b)(1) ........................ 6

III.  The Underlying State-court proceedings were not ministerial. ................................................................................. 9

IV.   The State's Arguments about Legislative Intent should Carry no Weight .................................................................. 13

V.    The State Mischaracterizes the Stay that Mr. Renteria Seeks. ......................................................................................... 21

VI.   The State Makes Little Attempt to Rebut Mr. Renteria's Strong Showing under the *Nken* Factors. ..................... 24

Conclusion ............................................................................ 25

# TABLE OF AUTHORITIES

**Cases**                                                              **Page(s)**

*A&R Engineering and Testing, Incorporated v. Scott,*
   72 F.4th 685 (5th Cir. 2023) ............................................................... 14

*Alvarez v. City of Brownsville,*
   904 F.3d 382 (5th Cir. 2018) .............................................................. 16

*Azar v. Allina Health Servs.,*
   139 S. Ct. 1804 (2019) ........................................................................ 21

*Bell v. State of Md.,*
   378 U.S. 226 (1964) ............................................................................. 19

*Bostock v. Clayton County, Georgia,*
   590 U.S. ___, 140 S. Ct. 1731 (2020) ................................. 13, 15, 19, 20

*City of Greenwood v. Peacock,*
   384 U.S. 808 (1975) ............................................................. 17, 20, 21

*Devillier v. State,*
   63 F.4th 416 (5th Cir. 2023) .............................................................. 14

*Gamble v. United States,*
   139 S. Ct. 1960 (2019) ........................................................................ 17

*Health and Hospital Corporation of Marion County v.*
   *Talevski,* 599 U.S. 166 (2023) ........................................................... 20

*Herzfeld & Stone v. Blair,*
   769 F.2d 645 (10th Cir. 1985) ........................................................ 4, 6

*Johnson v. Mississippi,*
   421 U.S. 213 (1975) ........................................................................ 16, 18

*Jordan v. Watkins,*
   681 F.2d 1067 (5th Cir. 1986) ........................................................ 10, 11

*June Medical Services L.L.C. v. Russo,*
   591 U.S. ___, 140 S. Ct. 2103 (2020) ............................................... 17

ii

*Luna Perez v. Sturgis Pub. Sch.*,
    143 S. Ct. 859 (2023) ........................................................................ 14

*Massachusetts Mu. Life Ins. Co. v. Russell*,
    473 U.S. 134 (1985) ............................................................................ 9

*Massachusetts v. E.P.A.*,
    549 U.S. 497 (2017) .......................................................................... 14

*In re Medina*,
    475 S.W.3d 291 (Tex. Crim. App. 2015) ........................................... 12

*Nken v. Holder*,
    556 U.S. 418 (2009) ................................................................... 24, 25

*Planned Parenthood of Greater Tex. Family Planning and
    Preventive Health Services, Inc. v. Kaufman*,
    981 F.3d 347 (5th Cir. 2020) ............................................................ 16

*Ramos v. Louisiana*,
    140 S. Ct. 1390 (2020) ...................................................................... 17

*Smith v. Winter*,
    717 F.2d 191 (5th Cir. 1983) ............................................................ 17

*State of Ga. v. Rachel*,
    384 U.S. 780 (1966) ................................................................... 16, 19

*Students for Fair Admissions, Inc. v. President and Fellows
    of Harvard College*, 600 U.S. 181 (2023) .................................... 18, 19

*Texas v. Travis County, Texas*,
    910 F.3d 809 (5th Cir. 2018) ............................................................ 14

*Thrasher v. Amarillo Police Dept.*,
    346 F. App'x. 991 (5th Cir. 2009) ..................................................... 25

*VanDerStok v. Garland*,
    ___ F.4th ___, 2023 WL 74034113 (5th Cir. Nov. 9, 2023) ................. 13

*Walker v. Epps*,
    287 F. App'x. 371 (5th Cir. 2008) ..................................................... 24

*Williams v. Homeland Ins. Co. of N.Y.*,
    18 F.4th 806 (5th Cir. 2021) ............................................................ 16

*Williams v. Kelley*,
    2017 WL 10350699, No. 5:02CV00450 JLH (W.D. Ark.
    April 23, 2017) ............................................................................. 22

*Williams v. State of Miss.*,
    608 F.2d 1021 (5th Cir. 1979) ........................................................ 2

*Winters v. New York*,
    333 U.S. 507 (1948) ................................................................... 2, 10

## Statutes & Rules

18 U.S.C. § 245 ............................................................................. 16, 18

28 U.S.C. § 1443(1) .................................................................... *passim*

28 U.S.C. § 1443(1)'s.................................................................... 4, 9

28 U.S.C. § 1455(b)(1) ............................................................... *passim*

28 U.S.C. § 1455(b)(5) ..................................................................... 23

Civil Rights Act of 1866 ............................................................... 18, 19

Fed. R. Civ. P. 11(b)(2) ..................................................................... 16

Fed. R. App. P. 8(a)(1) ............................................................. 21, 22, 23

**INTRODUCTION**

Texas accurately and repeatedly observes that David Renteria's removal of the State's capital murder prosecution to federal court after judgment appears to be unprecedented. Neither party has identified another case in which (a) state law gave the trial court discretion to decide when a judgment would be executed; (b) there was precedent for an adversarial hearing prior to the court's decision; (c) the record showed one defendant in Mr. Renteria's jurisdiction postponed his execution with evidence presented at a hearing while Mr. Renteria was denied a hearing altogether; (d) the trial court ruled that Mr. Renteria, the hearing-denied defendant, was entitled to reconsideration of the execution order due to the prejudice he suffered from the State's arbitrary and disparate treatment of him; and (e) State's highest criminal court held the trial court lost jurisdiction to enforce the Equal Protection of the Laws Clause of the Fourteenth Amendment after it rubberstamped the prosecution's proposed execution order.

These circumstances raise the question whether Congress's 1977 enactment of a law providing for removal on a showing of "good cause …

at a later time" than the pretrial periods the law specified for the preceding century permits post-judgment removal, 28 U.S.C. § 1455(b)(1), as observers at the time thought it could. It is undisputed that the district court was initially unaware of that change in the law when it remanded Mr. Renteria's case. Rather than address the ordinary public meaning of the law, Texas argues it would be illogical to conclude that Congress intended the language to be read to permit post-judgment removal.

The district court's decision denying Mr. Renteria's motion for reconsideration added two new issues. First, the question whether the Equal Protection Clause is a "law providing for the equal civil rights of citizens" under 28 U.S.C. § 1443(1). Texas maintains it is not. Second, whether under longstanding precedent from this Court and the Supreme Court, *e.g.*, *Winters v. New York*, 333 U.S. 507, 514 (1948), an interpretation of state law by a State's highest court satisfies the Supreme Court's requirement that a defendant's inability to enforce a federal equal rights law "be manifest in a formal expression of state law." *Williams v. State of Miss.*, 608 F.2d 1021, 1022 (5th Cir. 1979) (internal quotation marks and citation omitted). Texas largely ignores this issue.

Other than confirming that this is a unique case, the State's brief radiates heat but not much light. Texas begins by misrepresenting the record below such that none of the foregoing information could have been before the district court because Mr. Renteria "made *no* effort in the district court to show his request met the statutory criteria" for removal. St. Br. 2 (emphasis in original). The State proceeds by omitting a recent case from the Texas Court of Criminal Appeals ("CCA") interpreting Texas law to give trial courts discretion in deciding when to execute death judgments—a case initiated by a prosecutor's failed attempt to establish that Texas law makes the proceeding entirely ministerial, as the State argues here. *In re State ex rel. Ogg*, No. WR-93,812-01, 2022 WL 2344100 (Tex. Crim. Ct. App. June 29, 2022). Frustrated that the law maps so precisely onto the circumstances of Mr. Renteria's case, the State urges this Court to reshape the law with a blue pencil and to legislate new requirements into it. *E.g.*, St. Br. 28-30.

Texas concludes by mischaracterizing Mr. Renteria's motion for a stay and Rule 8 of the Federal Rules of Appellate Procedure.

The actual law—both the text and its judicial interpretations— when applied to the actual facts and circumstances—not those seen

3

through in the steamed-up mirror of the State's rhetoric—weighs heavily in favor of removal. Accordingly, this Court should stay the execution order and reverse the district court.

## REPLY ARGUMENTS

### I.    The State's Misrepresentations of the Record Undermine its Arguments.

Texas avers that Mr. Renteria "made *no* effort in the district court to show his request met the statutory criteria" for removal. St. Br. 2 (emphasis in original). The State may argue that Mr. Renteria's showing in the district court did not satisfy the statutory criteria. But the claim that he made *no* effort to meet those criteria is so obviously false based on the record the State had before it when it made the claim that Texas either takes a "cavalier … approach to this case," or it is "bent on misleading the court." *Herzfeld & Stone v. Blair*, 769 F.2d 645, 647 (10th Cir. 1985)

The State made that assertion while reading and citing a record, St. Br. 7-8 (citing ROA.4-20 and ROA.277-306), in which Mr. Renteria cited the statutory criteria, ROA.5-6, quoted this Court's leading case on 28 U.S.C. § 1443(1)'s requirements, ROA.6, and presented *twelve pages* of facts and argument under the heading "Mr. Renteria Meets the Statutory Criteria for Removal." ROA.8-19. In compliance with § 1455(a), Mr.

Renteria attached to his petition an appendix over 200 pages long that included all the filings, orders, and opinions of the Texas courts that were germane to his arguments. ROA.25-244. Mr. Renteria presented ten pages of argument and citations to authorities in his motion for reconsideration, ROA.277-286, backed them up with copies of the public laws the district court was unaware of, ROA.289-302, and supplemented his arguments after the Court of Criminal Appeals denied rehearing, ROA.303-320. Even the district court order that Texas is defending refers to Mr. Renteria's arguments about the ruling of the Texas Court of Criminal Appeals that Texas claims do not exist. ROA.13-14.

Mr. Renteria found support for his understanding of § 1455(b)(1) in the leading treatise on federal jurisdiction, which he cited to the district court. ROA.281-282. *See* n.2 *infra*. And, contrary to the State's arguments about § 1443(1), neither Mr. Renteria nor Texas has found a controlling case in which a court held, as the district court did in this case, that the Equal Protection Clause of the Fourteenth Amendment is not a "a law providing for the equal civil rights of citizens."

When a party makes "references [that] are at least inaccurate, if not totally misleading," or makes claims about the record that have "the

substance of a puff of smoke," a federal Court of Appeals need "not address the legal arguments grounded upon" them. *Herzfeld & Stone*, 769 at 647. This Court should decline to consider the State's arguments predicated on the false claim that Mr. Renteria "made *no* effort" to satisfy the removal statute and his petition was entirely "unsupported." St. Br. 2, 12.

## II. The Notice of Removal was not "Untimely" under the Ordinary Public Meaning of 28 U.S.C. § 1455(b)(1)

The removal statute that applies to criminal cases states that a criminal defendant must file his notice of removal states that

> not later than 30 days after the arraignment in the State court, or at any time before trial, whichever is earlier, except that for good cause shown the United States district court may enter an order granting the defendant or defendants leave to file the notice at a later time.

28 U.S.C. § 1455(b)(1). The State mischaracterizes Mr. Renteria's reliance on the statute's grant of discretion to the district court where a defendant shows "good cause … to file the notice at a later time" as an "exception to swallow the rule by extending the time for removal indefinitely even after exhaustion of postconviction remedies." St. Br. 23. One glance at the notice of removal shows that Mr. Renteria has asserted nothing of the sort. *See* ROA.15-17.

Mr. Renteria does not contend that the "good cause" exception in § 1455(b)(1) gave him carte blanche to remove his case at any time since he was found guilty in 2003, or in post-conviction proceedings, as in state habeas review. Quite the opposite: there was no right to removal in this case until September 18, 2023, when the CCA announced that Mr. Renteria's trial court had "no freewheeling jurisdiction to seek to safeguard Renteria's Fourteenth Amendment Rights," ROA.82, and ordered the trial court to rescind its order finding that the "State's disparate treatment of Defendant … prejudiced his ability to investigate potential grounds for relief from the courts and clemency authorities." ROA.32.

Even that ruling might not have conferred jurisdiction on the district court if it had not arisen under the Equal Protection Clause of the Fourteenth Amendment specifically and from the final motion in the criminal prosecution, not, as the State repeatedly asserts in its brief, in a "postconviction proceeding." St. Br. 18; *id.* at 12, 17, 19, 21, 22 (three times), 23, 24, 25 (twice), 26, 27, 39, 41.

Contrary to the State's claim that Mr. Renteria "made *no* effort" to satisfy § 1455(b)(1), Mr. Renteria argued in his notice that he had good cause under § 1455(b)(1) due to the CCA's "very recent and novel ruling

that Texas criminal courts lack jurisdiction to enforce the Equal Protection Clause after they set an execution date." ROA.18. The CCA's ruling fit so well into the removal act's provision for jurisdiction when a criminal defendant "is denied or cannot enforce in the courts of such State a right under any law providing for the equal civil rights of citizens of the United States," 28 U.S.C. § 1443(1), that it almost appears written with Mr. Renteria's case in mind. And so, thirty days after he received that ruling, Mr. Renteria filed his notice of removal.

The State's response, on the other hand, offers no sensible fit with § 1443(1) at all. Undone by the proposition that the "good cause" exception might allow for removal to accrue after trial, Texas argues that "[t]he only logical conclusion is that the good cause exception must relate to the pre-trial period." St. Br. 23. The State does not explain how that could be the logical meaning of "at a later time" as an exception to the requirement that removal can happen without good cause only "at any time before trial." It does not explain, that is, what "at a later time" could possibly mean if the rule already covers the options for removing "at any time before trial." The State's critique that Mr. Renteria's plain-meaning interpretation of the "good cause" exception would swallow the rule thus

goes so far as to accomplish the opposite: it swallows the exception entirely. Frustrated by Congress's decision to add what Texas calls "the statute's oblique allowance for filing 'at a later time,'" the State urges this Court to read the exception out of the law altogether. St. Br. 22. "This 'blue pencil' method of statutory interpretation—omitting all words not part of the clauses deemed pertinent to the task at hand—impermissibly ignores the relevant context in which statutory language subsists." *Massachusetts Mu. Life Ins. Co. v. Russell*, 473 U.S. 134, 142 (1985).

The Court should not accept the State's alarmist views about the meaning of § 1443(1)'s "good cause ... at a later time" exception. It is a plain-meaning provision that covers the circumstances pled in the notice of removal and presented here.

## III.  The Underlying State-court proceedings were not ministerial.

The State repeatedly impugns Mr. Renteria's right to remove this case by describing the underlying litigation as a "ministerial state court proceeding setting [or scheduling] an execution date." St. Br. 2, 17, 22, 28. Casting the trial court's role as purely "ministerial" is a disingenuous characterization of the CCA's decision in *In re State ex rel. Ogg*, No. WR-

93,812-01, 2022 WL 2344100 (Tex. Crim. Ct. App. June 29, 2022). Although the State cited *Ogg* cited extensively (if inaccurately) in the trial court, and an interpretation of state law "by the state's highest court 'puts … words in the statute as definitely as if it had been amended by the legislature,'" *Jordan v. Watkins*, 681 F.2d 1067, 1080 (5th Cir. 1986) (quoting *Winters v. New York*, 333 U.S. 507, 514 (1948)), Texas never cites *Ogg* in relation to its many, many assertions about the ministerial nature of the trial court's date-setting procedure.

In *Ogg*, the CCA stated that while "a trial court has a ministerial duty to *carry out* a sentence imposed[,] … a trial court is *not required* to *set* an execution date immediately" after the events that must be complete before an execution may be set. *Id.* at *2 (emphasis added). That is, the setting of an execution date is a ministerial duty in a capital case, but trial courts have discretion as to *when* to schedule an execution. Even after *Ogg*, "a question remains as to how broad a trial court's discretion is in deciding when to set an execution date." *Ibid*.

"Related to this is the question of whether the setting of an execution date may be delayed on the basis of a defendant's investigation of claims not pending in any court." *Ibid*. Mr. Renteria had urged his trial

court not to set the date the prosecution requested because he was investigating evidence that he is innocent of the death penalty. *See* ROA.10-11; ROA.192-194. He requested the same opportunity to address the court that another death-sentenced defendant from El Paso received before the trial court denied the State's motion to set his execution date. *See ibid*. When the trial court learned that the prosecution had denied Mr. Renteria the same access to its files that the prosecution had given that defendant, and that the prosecution in this case dragged out the proceedings unnecessarily, the trial court vacated its order setting the execution date in this case. ROA.32.

Per *Ogg*, then, and the statute it considered and the way that statute is applied to defendants who are similarly situated to Mr. Renteria, the trial court proceedings related to setting an execution date are not "ministerial" as Texas claims. The trial court had to make a discretionary ruling on the prosecution's motion to set an execution date. The court gave Mr. Renteria no opportunity to be heard, though, *before* it granted the State's second motion to set an execution date, *see* ROA.175-184, and then the CCA held the court lost jurisdiction to safeguard Mr. Renteria's rights under the Equal Protection Clause.

11

Instead of acknowledging the discretionary nature of a date-setting proceeding under *Ogg*, the State implies that the CCA ruled against Mr. Renteria in *In re State ex rel. Hicks* because of the supposed ministerial nature of that proceeding. St. Br. 39. That is not true.

The only ministerial duty mentioned in *Hicks* is the "ministerial duty to refrain from taking [an] action" that a trial judge has no authority or jurisdiction to take. ROA.82 (quoting *In re Medina*, 475 S.W.3d 291, 298 (Tex. Crim. App. 2015)). In that passage, the CCA is referencing its announcement in the previous paragraph that no state court has "free-wheeling jurisdiction" to decide federal constitutional claims brought by a death-row inmate with an execution date pending. *Id.* The *Hicks* decision did *not* find that the state trial court violated a ministerial duty related to its mandate "to carry out a sentence imposed," *Ogg* at *2, nor could it reasonably say that: the trial court in this case had already set the execution date, and such a holding would have contradicted its recent holding in *Ogg*.

The State should not be heard to argue on the basis of elision and outright omissions of important cases about what is ministerial and what is discretionary in execution-date setting proceedings in Texas. This

Court should examine the state court proceedings as they actually occurred, not as the State would like to recharacterize them.

## IV. The State's Arguments about Legislative Intent should Carry no Weight

"'This Court normally interprets a statute in accord with the ordinary public meaning of its terms at the time of its enactment.'" *VanDerStok v. Garland*, ___ F.4th ___, 2023 WL 74034113 at *6 (5th Cir. Nov. 9, 2023) (quoting *Bostock v. Clayton County, Georgia*, 590 U.S. ___, 140 S. Ct. 1731, 1738 (2020)). Under this Court's normal practice, then, the question in this case is whether the ordinary public meaning of "at a later time" in 1977 was at a time later than the pretrial periods referred to in the part of 28 U.S.C. § 1455(b)(1) that precede that phrase. But Texas does not even consider the ordinary public meaning of "at a later time" in 1977.[1] The State only mentions the phrase three times. Br. 22, 24, and

---

[1] Texas illustrates how far its analysis is from this Court's focus when the State mocks Mr. Renteria, and says he was frivolous, Br. 13 n.2, for relying on the same reading of the text as the leading treatise on federal jurisdiction because that is "a twenty-seven-year-old secondary source," Br. 24-25, i.e. a source from closer in time to the relevant enactment. There are probably dozens of cases in which the Supreme Court or this Court, or members of either Court have cited that treatise. *E.g.*, *Massachusetts v. E.P.A.*, 549 U.S. 497, 520 n.17 (2017) (relying on "no less an authority than Hart & Wechsler's" to dispute the Chief Justice); *A&R Engineering and Testing, Incorporated v. Scott*, 72 F.4th 685, 689, 691 (5th Cir. 2023); *Devillier v. State*, 63 F.4th 416, 439-440 (5th Cir. 2023)

25. Each time, Texas reaches for something other than the ordinary meaning.

First, Texas argues that "Congress intended" "at a later time" to mean "any time before trial" other than the "earlier" of the two specified. If, as Texas argues, Congress intended "at a later time" to mean "at a later time before trial," it would have made much more sense in ordinary English to use that phrase. The Supreme Court has been adamant that it is the courts' "job to apply faithfully the law Congress has written," meaning that the courts "cannot replace the actual text with speculation as to Congress' intent." *Luna Perez v. Sturgis Pub. Sch.*, 143 S. Ct. 859, 865 (2023) (internal quotation marks and citation omitted).

Then, Texas argues "it is flatly illogical to ascribe as broad a meaning to the phrase … as Renteria does." Br. 24. But it is perfectly logical for an English speaker to understand "at a later time" to mean later than the pretrial period referred to in the same sentence. It is Texas that relies on logic that only a lawyer would understand through the phrase "*ejusdem generis*." *Ibid*.

(Oldham, J. dissenting from the denial of rehearing *en banc*); *Texas v. Travis County, Texas*, 910 F.3d 809, 811 (5th Cir. 2018).

Finally, Texas argues the phrase "at a later time" is ambiguous. Br. 25. It offers nothing to support that contention. Rather, the State's argument seems to be that the ambiguity exists to be resolved by the State's reference to a judgment in § 1455(b)(3). But the statute's provision forbidding a case to proceed to judgment after removal says nothing about whether removal must occur before trial. The provision has just as much force if the defendant files his notice of removal during the trial or between the verdict and sentencing or between the verdict and entry of judgment.

Mr. Renteria emphasizes the text of §§ 1443(1) and 1455(b) because "only the words on the page constitute the law adopted by Congress and approved by the President." *Bostock*, 140 S. Ct. at 1738. Nevertheless, Texas is outraged by Mr. Renteria's reliance upon the text of the removal law enacted by Congress, calling that "frivolous." Br. 37.

Mr. Renteria argues the Fourteenth Amendment's Equal Protection of Law Clause satisfies Congress's requirement that a defendant in a removal case assert "a right under *any law* providing for the equal civil rights of citizens of the United States." 28 U.S.C. § 1443(1) (emphasis added). Texas argues that Mr. Renteria's textualist argument is frivolous

15

because the Supreme Court said in a case involving 18 U.S.C. § 245 that "any law" means "a federal law 'providing for specific civil rights stated in terms of racial equality.'" Br. 35 (quoting *Johnson v. Mississippi*, 421 U.S. 213, 219 (1975), in turn quoting *State of Ga. v. Rachel*, 384 U.S. 780, 792 (1966)). Texas is wrong.

To be sure, this Court must follow Supreme Court precedent. But Mr. Renteria asserts that if there is precedent that precludes his argument—and there is not—his reliance upon the law's text is "a nonfrivolous argument for … modifying, or reversing existing law." Fed. R. Civ. P. 11(b)(2). Both the Supreme Court and this Court have been at pains recently "'to better align … precedents … with the … plain language of United States statutes.'"[2] That is because this Court's "judicial duty under Article III" includes reconsideration of "'decisions outside the realm

---

[2] *Planned Parenthood of Greater Tex. Family Planning and Preventive Health Services, Inc. v. Kaufman*, 981 F.3d 347, 385 (5th Cir. 2020) (Ho, J., concurring) (quoting *Alvarez v. City of Brownsville*, 904 F.3d 382, 401 (5th Cir. 2018) (Ho, J., concurring)). *See also Williams v. Homeland Ins. Co. of N.Y.*, 18 F.4th 806, 818 (5th Cir. 2021) (Ho, J., concurring) (calling it "a fundamental principle of judicial methodology" that "[w]hen faced with a conflict between text and precedent, we should maximize the former—and minimize the latter").

of permissible interpretation—over the text of the Constitution and other duly enacted federal law.'"[3]

In this case, though, there is no conflict between the text of the law enacted by Congress and any binding precedent of the Supreme Court or this Court. First, Mr. Renteria's counsel could find no case in which either the Supreme Court or this Court held in a published opinion that the Equal Protection Clause is not a "law providing for equal civil rights."[4] In *City of Greenwood v. Peacock*, 384 U.S. 808 (1975), the removal petitioners relied upon the Equal Protection Clause. 384 U.S. at 811 n.3. But the Court did not find that provision inapplicable under § 1443(1). Rather, the Court held the petitioners failed to show their equal protection rights would be denied by the state courts. *Id.* at 827-828. Texas relies heavily on *Johnson v. Mississippi*, *supra*, but the words "equal protection" do not

---

[3] *Ramos v. Louisiana*, 140 S. Ct. 1390, 1421-22 (2020) (quoting *Gamble v. United States*, 139 S. Ct. 1960, 1981 (2019) (Gorsuch J., concurring)). *See also June Medical Services L.L.C. v. Russo*, 591 U.S. ___, 140 S. Ct. 2103, 2152 (2020) (Thomas, J., dissenting) ("we exceed our constitutional authority whenever we apply demonstrably erroneous precedent instead of the relevant law's text") (cleaned up).

[4] The State gets close with *Smith v. Winter*, 717 F.2d 191, 194 (5th Cir. 1983), but that case does not specifically mention the Equal Protection Clause when it says that "broad first amendment or fourteenth amendment claims do not satisfy the test" created by the courts.

17

appear in that case. In *Johnson*, the removal petitioners relied on 18 U.S.C. § 245. 421 U.S. at 215, 217. Apart from those cases, Texas relies on district court cases, unpublished cases from this Court, and nonbinding cases from other courts. Br. 32-33.

Second, as Justice Thomas recently recounted, the Supreme Court has consistently held since *The Slaughter-House Cases*, 83 U.S. 36 (1873), that although the "'prevailing purpose'" of Equal Protection Clause was "'the freedom of the slave race, the security and firm establishment of that freedom, and the protection of the newly-made freeman and citizen from the oppressions of those who had formerly exercised unlimited dominion over him,'" "the Fourteenth Amendment's equality guarantee applied to members of all races." *Students for Fair Admissions, Inc. v. President and Fellows of Harvard College*, 600 U.S. 181, 244-245 (2023) (quoting *Slaughter-House* at 67-72). As Justice Thomas said there, under the

> most commonly held view today … the [Fourteenth] Amendment was designed to remove any doubts regarding Congress' authority to enact the Civil Rights Act of 1866 and to establish a nondiscrimination rule that could not be repealed by future Congresses.

*Id.* at 241. It is entirely inconsistent with that understanding to deem the Equal Protection Clause anything other than a "law providing for the equal civil rights of citizens." 28 U.S.C. § 1443(1).

Section 1 of the Fourteenth Amendment expressly did two things relevant to this case: it made "[a]ll persons born or naturalized in the United States … citizens of the United States," and it prohibited each State from "denying to any person within its jurisdiction the equal protection of the laws." The text of the Fourteenth Amendment, like its object and purpose, came from the Civil Rights Act of 1866. *Bell v. State of Md.*, 378 U.S. 226, 292 (1964). The removal statute came from the same enactment. *Rachel*, 384 U.S. at 786. And the Supreme Court has repeatedly said the Equal Protection Clause, and the enactments of Congress to enforce it, are there to protect against racial discrimination—regardless of the race of the petitioner.

A "[c]ourt normally interprets a statute in accord with the ordinary public meaning of its terms at the time of its enactment." *Bostock*, 140 S. Ct. at 1738. But Texas's arguments call on this Court to abandon the text of the law and rewrite the removal law to suit the State's policy goals. For example, Texas faults Mr. Renteria for "not attempt[ing] to articulate

what procedure he envisions could occur in federal court." Br. 28-30. But Texas fails to identify anything in the removal law or any case interpreting it that requires that articulation. Indeed, the text is completely devoid of anything resembling such a requirement in a removal petition. The State's argument founders on the principle that courts "implement Congress's choices rather than remake them." *Health and Hospital Corporation of Marion County v. Talevski*, 599 U.S. 166, 178 (2023). "If judges could add to, remodel, update, or detract from old statutory terms inspired only by extratextual sources and [their] own imaginations, [they] would risk amending statutes outside the legislative process reserved for the people's representatives." *Bostock*, 140 S. Ct. at 1738.

Texas says that in addressing this "extraordinary and unprecedented" case, Br. 31,[5] "'[i]t is worth contemplating what the result would be if' Renteria's 'strained interpretation of § 1443(1)' were to prevail." Br. 41 (quoting *Peacock*, 384 U.S. at 832) (cleaned up). Mr. Renteria notes that section of *Peacock* the State quotes appears *after* the Court announced its rationale. The Court emphasized that point. To wit:

> We postulate these grave questions of practice and policy only to point out that if changes are to be made in the

---

[5] *See also* Br. 12, 23.

> long-settled interpretation of the provisions of this cen-
> tury-old removal statute, it is for Congress and not for
> this Court to make them.

384 U.S. at 834. By contrast, Texas asks this Court to rely on policy ra-

ther than text to craft its holding.

An appeal to policy implications is an ironic and telling way to end

a brief that argues the law is already so clear that the other side's argu-

ments are frivolous. After all, "courts aren't free to rewrite clear statutes

under the banner of our own policy concerns." *Azar v. Allina Health

Servs.*, 139 S. Ct. 1804, 1815 (2019).

## V.   The State Mischaracterizes the Stay that Mr. Renteria Seeks.

The State's argument against a stay is mistaken on a couple of

grounds. First, its objection that Mr. Renteria did not comply with Fed-

eral Rule of Appellate Procedure 8(a)(1) is off the mark because that rule

does not govern the type of stay that Mr. Renteria seeks here. Second,

Texas argues against the merits supporting a stay of execution only in

conclusory fashion.[6]

---

[6] The State also makes the obvious point that if this Court does not
have jurisdiction or if removal is untimely, it cannot issue a stay. In reply,
Mr. Renteria incorporates the foregoing arguments on jurisdiction, and
the removal statute's allowance for later removal "for good cause" as if
fully stated herein.

In its Statement of the Case (St. Br. 8) and again in its Summary of the Argument (St. Br. 12), Texas suggests that Mr. Renteria's motion for a stay of execution is defective because he did not first move for a stay of execution in district court. This is a disingenuous invocation of Rule 8(a)(1).

Rule 8(a)(1) provides that

> A party must ordinarily move first in the district court for the following relief:
>
> (A) a stay of the judgment or order of a district court pending appeal;
>
> (B) approval of a bond or other security provided to obtain a stay of judgment; or
>
> (C) an order suspending, modifying, restoring, or granting an injunction while an appeal is pending.

None of these conditions is present here. Mr. Renteria does not seek a stay of the lower court's judgment, nor does he seek an ordinary injunction. Furthermore, even if Rule 8(a)(1) applied, a Court of Appeals "nevertheless has jurisdiction to rule on [a] motion for stay in the first instance." *Williams v. Kelley*, 2017 WL 10350699 at *1, No. 5:02CV00450 JLH (W.D. Ark. April 23, 2017) (citing Advisory Notes to Fed. R. App. P. 8).

22

Furthermore, the State ignores the provision in Rule 8(a)(1) that says a party must "ordinarily" move for a stay first in district court. The rule thus implies that there are non-ordinary circumstances in which a stay could not or need not be filed. Indeed, the rule makes that implication explicit in section (b)(1), which exempts a party from filing a motion to stay in district court if that "would be impracticable." Mr. Renteria shows that it would have been impracticable here.

As explained in the motion to stay, the district court originally accepted the notice of removal and set a hearing on October 20, 2023, only to reverse that acceptance and remand the case approximately two hours later the same day. Mot. at 3-4. The hearing would have determined whether sufficient grounds existed under 28 U.S.C. § 1443(1) to permit removal—that is, whether sufficient grounds existed for federal removal jurisdiction. *See* 28 U.S.C. § 1455(b)(5). But by ordering a summary remand without a hearing, the district court effectively ruled it had no jurisdiction, thus preempting Mr. Renteria from moving for a stay of his execution or for any other relief. Under such circumstances, it was impracticable to seek a stay in district court first.

## VI. The State Makes Little Attempt to Rebut Mr. Renteria's Strong Showing under the *Nken* Factors.

In his motion for a stay, Mr. Renteria properly stated the standard for obtaining a stay of execution:

> (1) whether the applicant has made a strong showing that he is likely to succeed on the merits;
>
> (2) whether the applicant will be irreparably injured absent a stay;
>
> (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and
>
> (4) where the public interest lies.

*Nken v. Holder*, 556 U.S. 418, 434 (2009) (internal citations and quotations omitted).

Texas critiques Mr. Renteria's motion for a stay because it "restate[s] his arguments on the merits of his removal appeal," St. Br. 42. Indeed, as required under the first *Nken* factor, Mr. Renteria has made a strong showing of the merits of his appeal. Then, on the next page, the State cites this Court's prior statement that "the merits of the case are essential to our determination of … irreparable harm[.]" *Id.* at 43 (quoting *Walker v. Epps*, 287 F. App'x. 371, 375 (5th Cir. 2008). Taking this Court's guidance for finding irreparable harm, relied upon by Texas, Mr. Renteria incorporates his discussions of the merits of removal to show

24

the irreparable harm that would occur without a stay, as if fully stated herein. Mot. at 6-10.

Finally, Texas does not substantially address the third or fourth factors prescribed by *Nken*. Instead, Texas responds merely that Mr. Renteria "fails to show" that either of those factors are in Mr. Renteria's favor. St. Br. 43 (listing, without addressing, "substantial harm" and the public interest.) The State's conclusory assertions are insufficient to rebut Mr. Renteria's showing that the *Nken* factors support a stay of execution. *See, e.g., Thrasher v. Amarillo Police Dept.,* 346 F. App'x. 991, 992-93 (5th Cir. 2009); Mot. at 6-11. The Court should therefore find these two factors lie in Mr. Renteria's favor, as they are essentially conceded.

## CONCLUSION

For the foregoing reasons, and those presented in Mr. Renteria's principal brief and motion for stay of execution, this Court should (1) stay the trial court's execution order, (2) reverse the order of the district court remanding this properly removed case back to state court, and (3) direct the district court to hold the hearing required by 28 U.S.C. § 1455(b)(5).

Respectfully submitted,

MICHAEL WISEMAN
WISEMAN & SCHWARTZ, LLP
718 Arch Street, Suite 702
    North
Philadelphia, PA 19106
215-450-0903
wiseman@wise-
    manschwartz.com

MAUREEN FRANCO
Federal Public Defender
Western District of Texas

*/s/ Tivon Schardl*
TIVON SCHARDL
Chief, Capital Habeas Unit
919 Congress Ave., Suite 950
Austin, Texas 78701
(737) 207-3008
tivon_schardl@fd.org

*Counsel for Appellant*

DATED:  November 14, 2023.

## CERTIFICATES OF SERVICE AND COMPLIANCE WITH ECF FILING STANDARDS

I do hereby certify that on November 14, 2023, the foregoing document was served, via the Court's CM/ECF Document Filing System, upon all registered users and counsel of record for Appellee.

Counsel further certifies that (1) required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13; (2) the electronic submission is an exact copy of the paper document in compliance with Fifth Circuit Rule 25.2.1; and (3) the document has been scanned with the most recent version of a commercial virus scanning program and is free of viruses.

/s/ *Tivon Schardl*

Tivon Schardl
Counsel for Appellant

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMI-TATION, TYPEFACE REQUIREMENTS, AND TYPLE STYLE RE-QUIREMENTS**

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this reply brief contains 6,303 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because the brief has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point font.

*/s/ Tivon Schardl*
Tivon Schardl
Counsel for Appellant

DATED: November 14, 2023